(No. 47402

THE PEOPLE *ex rel.* ROBERT H. RICE, State's Attorney, Petitioner, v. JOSEPH F. CUNNINGHAM *et al.* Judges, *et al.*, Respondents.

*Opinion filed September 29, 1975.*

GOLDENHERSH, J., took no part.
RYAN, J., specially concurring.

William J. Scott, Attorney General, of Springfield, and
Robert H. Rice, State's Attorney, of Belleville, and James
B. Zagel and Jayne A. Carr, Assistant Attorneys General,
of Chicago, and Clyde L. Kuehn, Assistant State's Attor-
ney, of Belleville, and Charles D. Sheehy, Jr., Edward N.
Morris, Christine M. Drucker, Robert L. Janes, Robert
Anderson, Martin P. Moltz, Michael Weinstein, and Robert
Perry, State's Attorneys Association Appellate Assistance
Service, of Elgin, for petitioner.

Theodore A. Gottfried, Stephen P. Hurley, Robert E.
Davison, Michael J. Rosborough, Joshua Sachs, and Rich-
ard Wilson, all of Office of State Appellate Defender, of
Mt. Vernon, for respondents.

John T. Moran, Jr., Robert P. Isaacson, and Kathryn J.
Kuhlen, for *amicus curiae* the Public Defender of Cook
County.

MR. JUSTICE KLUCZYNSKI delivered the opinion
of the court:

We granted leave to petitioner, the State's Attorney of

St. Clair County (hereinafter the State), to file an original action for *mandamus* (Ill. Rev. Stat. 1973, ch. 110A, par. 381(a)) seeking to compel respondents, three judges of the Twentieth Judicial Circuit, to convene as a panel and hear evidence on the circumstances involved in the commission of multiple murders of which additional respondents, Daniel Lee Lott and Willie B. Cotton, had been found guilty following a jury trial. The principal respondents in this action are Lott and Cotton, since under the circumstances the respondent judges are merely nominal parties. (Ill. Rev. Stat. 1973, ch. 110A, par. 381(d).) We are advised that evidence was presented at trial to indicate that the murders occurred during the course of an armed robbery. The purpose of convening the three-judge panel was to determine whether the death penalty should be imposed. Ill. Rev. Stat. 1973, ch. 38, par. 1005—8—1A.

Following the jury trial, the State filed a motion requesting that a three-judge panel be assigned to the case and that a hearing be held to determine the applicability of the death penalty. The trial judge notified the chief judge of the circuit that a three-judge panel should be convened. The defendants filed separate motions in opposition to the convening of the panel and maintained that the provisions of the death penalty statute were violative of the State and Federal constitutions.

The three-judge panel convened, and on March 13, 1975, issued the following order:

"The Court finds that the statute 1005—8—1A is invalid under the Constitutions of the United States and the State of Illinois, and assigns the following reasons:

(1) That the creation of a special three-judge panel is an attempted exercise of judicial authority by the Legislative branch. The sole power to create courts lies in the judiciary.

(2) The statute and the procedures of 1005—8—1A are so vague that they fail to set

proper standards by which a court can sentence a defendant to the death penalty.

(3) We find that the statute does not violate Article I, Section 11 of the Illinois State Constitution.

For the above-stated reasons we declare this section invalid and order this to be in the form of a declaratory judgment, and the panel hereby remands the defendants to the trial judge for sentencing pursuant to statute."

The imposition of sentences as ordered by the three-judge panel has been stayed pending disposition of this action.

Respondents maintain that *mandamus* is an extraordinary remedy and that the State improperly seeks to use it for the purpose of an interlocutory appeal. We have held in comparable circumstances, however, that, under its supervisory and administrative powers and duties as provided in the Constitution, this court may consider the issuance of a writ of *mandamus* when the matters involved are of a compelling and general importance, even though the normal criteria for awarding such a writ are not present. *People ex rel. Carey v. Strayhorn,* 61 Ill.2d 85, 89; *People ex rel. Hanrahan v. Power,* 54 Ill.2d 154, 157.

The death penalty statute provides:

"In any case in which the defendant is convicted of murder, the State shall seek imposition of the death penalty in all cases where any of the following circumstances obtain:

(1) the murdered individual was a peace officer or fireman killed in the course of performing his official duties; or

(2) the murdered individual was an employee of an institution or facility of the Department of Corrections, or its successor agency, killed in the course of performing his official duties, or was otherwise present in such institution or facility with the knowledge and approval of the chief administrative officer thereof; or

(3) such person has been convicted of murdering two or more individuals under Section 9—1 of the Criminal

Code of 1961, as amended, or under any law of the United States or of any State which is substantially identical to Subsection (a) of Section 9—1 of the Criminal Code of 1961, as amended, regardless of whether the deaths occurred as the result of the same act or of several related or unrelated acts; or

(4) the murdered individual was killed as a result of the hijacking of an airplane, train, ship, bus or other public conveyance; or

(5) the person committed the murder pursuant to a contract, agreement or understanding by which he was to receive money or anything of value in return for committing the murder; or

(6) the murdered individual was killed in the course of a robbery, rape, aggravated kidnapping, arson or when death occurs following the commission of indecent liberties with a child by a party to the crime;

where any of the above circumstances exist, following the conviction of murder under Section 9—1 of the 'Criminal Code of 1961,' the trial judge shall in all cases, before sentencing the defendant notify the chief judge of the circuit to assign 3 circuit judges to the case, one of whom should be the judge who presided over the defendant's trial if that judge is able to serve. The 3 judge court shall then hear evidence on the foregoing circumstances and if a majority of the judges of such court determines that any of the above facts occurred, then the court shall sentence the defendant to death unless a majority of the judges of such court determines that there are compelling reasons for mercy and that the defendant should not be sentenced to death. At the hearing, the State shall have the burden of proving beyond a reasonable doubt the facts requiring imposition of the death penalty.

If the 3 judge court does not find as provided in this Section, after a hearing, that the defendant committed a murder which is beyond all reasonable doubt within one or more of the classifications set forth in this Section, the defendant shall be sentenced under Section 5—5—3 of the Unified Code of Corrections.

If the 3 judge court sentences the defendant to death and an appeal is taken by the defendant, the appellate court shall consider the appeal in two separate stages. In the first stage, the case shall be considered as are all other

criminal appeals and the court shall determine whether there were errors occurring at the trial of the case which require that the findings of the trial court be reversed or modified. If the appellate court finds there were no errors justifying modification or reversal of the findings of the trial court the appellate court shall conduct an evidentiary hearing to determine whether the sentence of death by the 3 judge court was the result of discrimination. If the appellate court, in the second stage of the appeal, finds any evidence that the sentence of death was the result of discrimination, the appellate court shall modify the sentence to life imprisonment.

In determining whether there is evidence of discrimination in sentencing the defendant to death, the appellate court shall consider whether the death sentence, considering both the crime and the defendant was disproportionate or the result of discrimination based on race, creed, sex or economic status.

In the event that the death penalty in this Act is held to be unconstitutional by the Supreme Court of the United States or of the State of Illinois, any person convicted of murder shall be sentenced to imprisonment in the penitentiary for any indeterminate term with a minimum of not less than 14 years.

In the event that any death sentence pursuant to the sentencing provisions of this Section is declared unconstitutional by the Supreme Court of the United States or of the State of Illinois, the court having jurisdiction over a person previously sentenced to death shall cause such person to be brought before the court, and the court shall sentence such person to imprisonment in the penitentiary for any indeterminate term with a minimum of not less than 14 years.

No sentence of death imposed under this Section shall be executed unless there has been a final adjudication that the sentence is constitutional. For purposes of this Section, "final adjudication" means the completion of the ordinary appellate process in a single case and does not contemplate the exhaustion of all available remedies."
Ill. Rev. Stat. 1973, ch. 38, par. 1005—8—1A.

The State contends that the provision for a three-judge panel is merely a procedural requirement for application of the death penalty and does not effect the

creation of a special court. The State argues that the legislature has inherent power to establish rules of procedure governing civil and criminal cases subject only to two limitations. The first is an express constitutional prohibition against legislative rule-making, as exemplified by the constitutional provision stating that the Supreme Court shall provide by rule for direct appeal from the circuit court (Ill. Const. (1970), art. VI, sec. 4(b)). The second limitation derives from the principle of separation of powers which prohibits legislative interference with an inherent judicial function. Respondents maintain that the legislature was without the constitutional authority to create a special court consisting of a three-judge panel, and, in the alternative, if this is not the creation of a new court, it is a usurpation of the supreme court's supervisory and rule-making authority.

The judicial article of the Constitution of 1870 initially gave the legislature constitutional authority to create new courts. (Art. VI, secs. 1 and 11.) The judicial amendment of 1962 (effective January 1, 1964), however, extensively revised that article and removed this legislative authorization. The Constitution of 1970, which follows the 1962 judicial amendment in this respect, provides that "[t]he judicial power is vested in a Supreme Court, an Appellate Court and Circuit Courts." (Art. VI, sec. 1.) The present judicial article contains no provision for legislative creation of new courts. (See Braden and Cohn, The Illinois Constitution: An Annotated and Comparative Analysis 327-32 (1969).) It is clear, therefore, that the legislature has no constitutional authority to create a new court under article VI of the 1970 Constitution.

While the organization and the number of judges required for a determination of a proceeding in the Supreme Court and in the appellate court are expressly stated (Ill. Const. (1970), art. VI, secs. 3 and 5), the present Constitution is silent as to the number of judges required for the determination of a proceeding in the

circuit court. This court, however, has consistently held that circuit (and superior, as classified under the previous constitution) court judges occupy independent offices with equal powers and duties, and that they cannot and do not act jointly or as a group. (See *Harvey v. Van DeMark,* 71 Ill. 117, 120; *Hall v. Hamilton,* 74 Ill. 437, 441; *People v. Link,* 365 Ill. 266, 291; *Wayland v. City of Chicago,* 369 Ill. 43, 47-48; *People ex rel. Jonas v. Schlaeger,* 381 Ill. 146, 153; *Bauer v. Sawyer,* 8 Ill.2d 351, 361.) In *Hall v. Hamilton,* the *placita* to the record indicated that three judges of the superior court as well as two circuit judges were present to constitute the court. It was noted that if the record was true then the decision on questions which arose during the proceeding was submitted to five judges rather than one. It was held in that case that, although it was error for the five judges to participate jointly in the proceedings, the court was not without jurisdiction. As was stated: "Either of the five judges had jurisdiction to try any and all causes, and the association of the others with him did not detract from or deprive him of the jurisdiction vested in him by the constitution and the statute." (74 Ill. 437, 441.) In *Hall v. Hamilton* the court noted that it was not material to the issue raised whether or not the legislature could require the circuit judges by statute to sit "in bank," since no statutory requirement had been imposed. As heretofore mentioned, initially the 1870 Constitution afforded the legislature the power to create new courts, but the present constitution confers no such authorization. The State has not cited nor has our research disclosed any authority that the judicial amendment of 1962 or the provisions of the judicial article of the 1970 Constitution were intended to contravene the long-standing view that proceedings in the circuit court are to be conducted by one judge.

In the present case the provision of the death penalty statute providing for the three-judge panel requires that they act collectively in determining the existence of any of

the enumerated circumstances and in pronouncing sentence. This is not merely a procedural requirement, but rather it involves the scope of a circuit judge's jurisdiction. The provision, therefore, is constitutionally defective because each of the judges constituting the panel is deprived of the jurisdiction vested in him by the 1970 Constitution.

Respondents have raised constitutional claims that several of the enumerated situations which require imposition of the death penalty are vague and uncertain. We have examined the categories enumerated in the statute and are of the opinion that they are proper.

In considering the "mercy provision" of the statute the State's position is that it gives only a limited discretion to the sentencing panel. It says the panel can find the "compelling reasons" for mercy only in the circumstances surrounding the crime itself, that is, only in the evidence the panel would hear in considering whether the circumstances of the crime require the imposition of the death penalty. But obviously this is too narrow a view to take of what may and indeed must be considered in determining whether mercy should be extended. The offender as well as the crime must be examined. The additional observation we would make is that the provision is defective because it does not contain standards or guidelines to be considered in determining whether there are "compelling reasons for mercy" and the imposing of a sentence other than a sentence of death. See, *e.g.*, Model Penal Code sec. 210.6(4); *State v. Dixon* (Fla. 1973), 283 So. 2d 1; *Coley v. State* (1974), 231 Ga. 829, 204 S.E.2d 612; and Note, 87 Harv. L. Rev. 1690 (1974).

The death penalty statute further provides that if an appeal is taken from a death sentence, the appellate court will consider the appeal in two separate stages. In the first stage the case is considered as all other criminal appeals to determine whether errors occurred at trial which require a reversal or modification of the findings. In the second

stage the appellate court is to conduct an evidentary hearing to determine whether the imposition of the death penalty by the three-judge court was the result of discrimination. The procedure for appellate review established by the statute is clearly unconstitutional. The State argues that the term "appellate court" should be generically construed to mean a reviewing court, that is, the Supreme Court; but the statute repeatedly refers to the review procedure in the appellate court and we do not believe that the meaning suggested by the State is plausible. The Constitution of 1970 states that appeals from the circuit court imposing a sentence of death "shall be directly to the Supreme Court as a matter of right." (Art. VI, sec. 4(b).) The provision of the death penalty statute requiring an appeal to the appellate court is in clear contradiction to this mandate.

In summary, we hold invalid the provision of the death penalty statute pertaining to the impaneling of a three-judge court, the provision relating to the exercise of "compelling reasons for mercy" which would obviate the imposition of the death penalty and the provision establishing the appellate review procedure for one sentenced to death. The provisions that we have held unconstitutional are so connected and dependent upon one another as to warrant the belief that the legislature would not have passed the remaining portions of the statute independent of these. Consequently, the invalid sections may not be severed. (*Fiorito v. Jones*, 39 Ill.2d 531, 540; *Livingston v. Ogilvie*, 43 Ill.2d 9, 23.) The imposition of the death penalty under this statute is improper, and the writ of *mandamus* is therefore denied.

Having resolved the validity of the death penalty statute, we find it unnecessary to consider the other numerous contentions raised by the parties. The previous order entered by this court staying imposition of sentences by the circuit court is hereby vacated. The respondents Lott and Cotton are to be sentenced to a term of

imprisonment in the penitentiary as authorized by law.

*Writ denied.*

MR. JUSTICE GOLDENHERSH took no part in the consideration or decision of this case.

MR. JUSTICE RYAN, specially concurring:

I concur with the majority that the discretion vested in the three-judge panel in determining if the death penalty is not to be imposed is too unbridled to satisfy the constitutional requirements expounded in *Furman v. Georgia*, 408 U.S. 238, 33 L. Ed. 2d 346, 92 S. Ct. 2726. The "compelling reasons for mercy" test is too vague and indefinite and permits a degree of arbitrariness in the imposition of the death penalty not permissible under *Furman*. To this extent I concur in the majority opinion.

I do not agree however with the majority's holding that the legislature cannot create a three-judge panel. Unfortunately, the statute refers to this panel as a "three-judge court." This language at once invites the objection that under our present constitution the legislature has no authority to create courts. The "three-judge court" illusion is furthered by the implication in the statute that the three-judge court sentences the defendant to death. However, section 5—4—1(b) of the Unified Code of· Corrections (Ill. Rev. Stat. 1973, ch. 38, par. 1005—4—1(b)) provides that all sentences shall be imposed by the judge who presided at the trial unless he is no longer sitting as a judge in that court. Also, section 9—1(b) of the Criminal Code of 1961 (Ill. Rev. Stat. 1973, ch. 38, par. 9—1(b)) provides for the determination by the three-judge court of whether or not the death penalty shall be imposed. "After such determination by a majority of the 3 judge court and notice to the trial judge of their decision in writing the trial judge shall enter sentence accordingly."

Thus, the three-judge court does not impose the sentence of death under the statute and does not deprive

the judge who presided at the trial of his judicial function. The three judges act only as a panel for determining whether or not the death penalty shall be imposed and do not act as a court. This is not usurping the function of the judge. In fact, prior to the Code of Criminal Procedure of 1963, in certain felonies, including murder, the jury that determined the defendant's guilt also by its verdict fixed the punishment and the judge sentenced the defendant to the punishment fixed by the verdict. Ill. Rev. Stat. 1963, ch. 38, par. 801.

The three-judge panel idea is not unique to the statute under consideration. Without conducting an exhaustive search of the statutes, I can offhand think of at least two other instances in which the legislature has conferred nonjudicial functions on three-judge panels. In the North Shore Sanitary District Act (Ill. Rev. Stat. 1973, ch. 42, par. 276.99 *et seq.*) and in the Sanitary District Act of 1917 (Ill. Rev. Stat. 1973, ch. 42, par. 298.99 *et seq.*) the legislature has provided for three judges to sit as Boards of Commissioners in the organization of districts under these acts.

Also, it cannot be seriously contended that the legislature lacks authority to confer upon judges authority to perform judicial related functions or even nonjudicial functions. If the legislature lacks such authority no judge may perform a marriage ceremony or administer an oath because the authority to perform both functions stems from legislative grants. See Ill. Rev. Stat. 1973, ch. 89, par. 4 (Marriages); Ill. Rev. Stat. 1973, ch. 101, par. 2 (Oaths).

I agree with the majority that the provision of the statute for an appeal to the appellate court is in violation of section 4(b) of article VI of our constitution. However, if the statute were not otherwise invalid, I would hold that the provision for appellate review is severable and that the constitutional provision and our Rule 603 (Ill. Rev. Stat. 1973, ch. 110A, par. 603) providing for appeals directly to this court in cases where the penalty of death is imposed would govern.