(No. 60579.—

# YELLOW CAB COMPANY, Appellant, v. JAMES JONES, Appellee.

*Opinion filed October 3, 1985.*

MORAN, J., dissenting.

William J. Harte, Ltd., of Chicago (William J. Harte, of counsel), Sonnenschein, Carlin, Nath & Rosenthal, of Chicago (Howard C. Hirshman, of counsel), and Robert E. Haythorne, of Geneva, for appellant.

Vito C. DeCarlo, of DeMunno, Krol, DeCarlo & Bongiorno, Ltd., of Chicago (Sidney Z. Karasik, of counsel), for appellee.

JUSTICE GOLDENHERSH delivered the opinion of the court:

An arbitrator for the Industrial Commission found

that while the relationship of employee and employer existed between petitioner, James Jones, and respondent, Yellow Cab Company, petitioner suffered accidental injuries arising out of and in the course of his employment, and awarded him compensation for temporary total disability, permanent partial disability, and medical payments. On review, the Industrial Commission reduced the amount awarded for permanent partial disability, and otherwise confirmed the award. On *certiorari*, the circuit court of Cook County found that the Commission's decision that there existed an employer-employee relationship between the parties was against the manifest weight of the evidence and reversed the decision of the Commission and set aside the award. Petitioner appealed to the appellate court, which reversed the decision of the circuit court and reinstated the decision of the Industrial Commission. (124 Ill. App. 3d 644.) We allowed respondent's petition for leave to appeal (94 Ill. 2d R. 315).

The rules of this court governing appeals involving review of Industrial Commission orders, in pertinent part, provide:

"Rule 22. Appellate Court Organization

\* \* \*

(g) Industrial Commission Appeals. A five-judge panel of the Appellate Court will sit as the Industrial Commission division of each district of the Appellate Court. The Industrial Commission division will hear and decide all appeals involving proceedings to review orders of the Industrial Commission. The division will sit, periodically, as its judicial business requires, at any place in the State it chooses. Five judges must participate in the decisions of the Industrial Commission division, and the concurrence of three shall be necessary to a decision. If a judge designated to serve on this panel cannot participate, the alternate designated by the Supreme Court shall participate. Motions of course may be decided by one judge." 94 Ill. 2d R. 22(g).

"Rule 315. Leave to Appeal From the Appellate Court to the Supreme Court

(a) *** However, no petition for leave to appeal from a judgment of the five-judge panel of the Appellate Court designated to hear and decide cases involving review of Industrial Commission orders shall be filed, unless two or more judges of that panel join in a statement that the case in question involves a substantial question which warrants consideration by the Supreme Court." (94 Ill. 2d R. 315(a).)

Here, although there was no statement joined by two or more judges of the panel that the case in question involves a substantial question which warrants consideration by this court, we allowed leave to appeal in order to consider respondent's attack on the validity of Rules 22(g) and 315(a).

Respondent contends that the "creation, organization and jurisdiction of [the Industrial Commission division] directly conflicts with article VI of the Illinois Constitution" and that the rules purporting to establish the division are void. It contends further that in proscribing petitions for leave to appeal from decisions of the Industrial Commission division unless two judges of that court state that the case involves a substantial question which warrants consideration by the Supreme Court, Rule 315(a) imposes upon petitioners for leave to appeal from decisions of the Industrial Commission division a burden which cannot withstand constitutional scrutiny. It argues that Rule 315(a), as amended, deprives those seeking this type of appeal of the unrestricted opportunity to petition this court for leave to appeal granted all other litigants. This, it asserts, results in a deprivation of equal protection and due process. Respondent argues further that the panel, as created, is not required to be selected from the judicial district in which it sits and is violative of article VI, section 5, which requires that an appellate division be within each judicial district and that

the appellate judges be selected from each district. Finally, they argue that in a panel consisting of five judges from five districts, four of the judges "are deprived of the jurisdiction vested in them by the Constitution" and that "an opinion from this special court is void due to the constitutional requirement that each appellate division have at least three judges."

Article VI, section 1, of the Constitution of 1970 provides for a supreme court, an appellate court and circuit courts. Section 2 provides for the division of the State into five judicial districts "for the selection of Supreme and Appellate Court Judges." Article VI, section 6, provides for appeals as a matter of right, with exceptions not pertinent here, from the final judgment of a circuit court to the appellate court in the judicial district in which the circuit court is located. In each instance the clear and explicit provision is for one appellate court with its members to be selected from the five districts. The only limitation on jurisdiction is that the appeal be to the appellate court in the judicial district in which the circuit court is located. The Constitution does not provide for an appellate court of the judicial district.

The clear and explicit language of article VI, section 5, provides that the supreme court shall prescribe by rule the number of appellate divisions in each judicial district, that each division shall have at least three judges, and that assignments to divisions shall be made by the supreme court. Article VI contains no restriction or limitation concerning the district of selection of the members of a division, nor does it provide that all of the judges of each division within a judicial district be selected from that district. The only limitation on the number of judges in a division provides for a minimum of three and makes no reference to a maximum number.

The judicial article adopted in 1962, effective January 1, 1964, provided:

"General administrative authority over all courts in this State including the temporary assignment of any judge to a court other than that for which he was selected with the consent of the Chief Judge of the Circuit to which such assignment is made is vested in the Supreme Court and shall be exercised by the Chief Justice in accordance with its rules." Ill. Const. 1870, art. VI (1964), sec. 2.

"The Supreme Court shall have authority to assign additional judges to service in the Appellate Court from time to time as the business of the Court requires. *** Assignments to divisions shall be made by the Supreme Court and a judge may be assigned to a division in a district other than the district in which such judge resides with the consent of a majority of the judges of the district to which such assignment is made." Ill. Const. 1870, art. VI (1964), sec. 6.

In contrast, article VI, section 16, of the Constitution of 1970 provides:

"General administrative and supervisory authority over all courts is vested in the Supreme Court and shall be exercised by the Chief Justice in accordance with its rules. The Supreme Court shall appoint an administrative director and staff, who shall serve at its pleasure, to assist the Chief Justice in his duties. The Supreme Court may assign a Judge temporarily to any court and an Associate Judge to serve temporarily as an Associate Judge on any Circuit Court. The Supreme Court shall provide by rule for expeditious and inexpensive appeals."

Constitutional provisions which are plain and explicit on their face, the meaning of which is clearly apparent, permit of no construction by the courts. (*DeBruyn v. Elrod* (1981), 84 Ill. 2d 128.) The plain and explicit provisions of article VI provide for a single appellate court and for districts from which the judges are selected. The only jurisdictional limitation is that the appeal be to the appellate court within the district in which is located the circuit court from which the appeal is taken. We find no

restriction or limitation in article VI of the power of the supreme court to designate the number of divisions, to assign judges to those divisions, or determine the .number of judges to serve on each division, so long as there are no less than three.

We have considered respondent's arguments based on *People ex rel. Rice v. Cunningham* (1975), 61 Ill. 2d 353, and *In re Contest of the Election for the Offices of Governor & Lieutenant Governor* (1983), 93 Ill. 2d 463, that, by creating the Industrial Commission division, we have created a new court not authorized by the Constitution. *Rice* and *Contest of the Election* are clearly distinguishable. *Rice* involved the validity of a statute which provided for the appointment of a three-judge panel of circuit judges to determine whether the death penalty should be imposed on defendants found guilty of murder. (Ill. Rev. Stat. 1973, ch. 38, par. 1005—8—1A.) This court held the statute invalid because the provision that the judges act collectively deprived each of the judges constituting the panel of the jurisdiction vested in him by the 1970 Constitution. (*People ex rel. Rice v. Cunningham* (1975), 61 Ill. 2d 353, 360-61.) In *Contest of the Election* the court followed *Rice* and held a statute which provided that a three-judge panel hear the action to contest the election invalid. In contrast, Rule 22(g) provides that the Industrial Commission division sits as a division of each district of the appellate court. Appeals from the circuit court are taken as in other cases and are to the appellate court district in which is located the circuit court from which the appeal was taken. Respondent has cited no constitutional provision which supports its contention that a division must be comprised of judges selected from the district in which the division sits. Obviously, the provision for the designation of five judges to serve on the panel meets the requirements that the panel consist of not less than three members.

We find no constitutional impediment to the designation of judges in the manner provided in Supreme Court Rule 22(g) to serve on the panel which reviews orders of the Industrial Commission.

We consider next respondent's contention that the requirement of Supreme Court Rule 315(a) that two members of the appellate court join in a statement that the case involves a substantial question which warrants consideration by this court deprives litigants in cases involving review of Industrial Commission orders of equal protection of the law and of due process. Conceding that due process does not require that there be a right of appeal (*Goodrich v. Sprague* (1943), 385 Ill. 200), respondent argues that, once granted, the right to appeal must be uniform and nondiscriminatory. Respondent argues, too, that no "reasonable basis" or "rational difference" exists to support the classification and that there is no rational relationship between the classification and the purpose of the rule.

Article VI, section 4(c), of the Constitution of 1970 provides for appeals from the appellate court to the supreme court as a matter of right if a constitutional question arises for the first time in and as a result of the action of the appellate court, or if a division of the appellate court certifies that a case decided by it involves a question of such importance that the case should be decided by the supreme court. Section 4(c) also provides that the supreme court may provide by rule for appeals from the appellate court in other cases. Article VI, section 16, provides that the supreme court shall provide by rule for expeditious and inexpensive appeals. In the exercise of its constitutional authority this court has created classes of appeals, some as of right, and some by permission. See 87 Ill. 2d Rules 306, 307, 308.

The validity of a rule adopted by this court should be tested by the same standards as are applicable to a stat-

ute. If there is a reasonable basis for differentiation, the General Assembly may constitutionally classify persons and objects for the purpose of legislative regulation or control and may pass laws applicable only to such persons or objects. (*Bridgewater v. Hotz* (1972), 51 Ill. 2d 103, 111.) Further applying the test applicable to a statute, the distinction between litigants who seek leave to appeal from the appellate court to this court in cases involving orders of the Industrial Commission and petitioners in other types of cases must be upheld if any state of facts may reasonably be conceived that would justify it. *People v. McCarty* (1981), 86 Ill. 2d 247, 253.

Historically, review of the decisions of the Industrial Commission has always differed from other appeals. Until amended in 1919, section 19(f) of the Workmen's Compensation Act provided, in pertinent part:

> "(f) The decision of the Industrial Board, acting within its powers, according to the provisions of paragraph (e) of this section, and of the committee of arbitration, where no review is had and its decision becomes the decision of the Industrial Board in accordance with the provisions of this section, shall, in the absence of fraud, be conclusive, but the Supreme Court shall have power to review questions of law involved in any such decision: *Provided*, that application is made by the aggrieved party within thirty days after notice given to him of such decision or within thirty days after the expiration of the time allowed for filing the agreed statement of facts or stenographic report with said board, by *certiorari, mandamus* or by any other method permissible under the rules and practices of said court or the laws of this State." (1913 Ill. Laws 349.)

In 1919, section 19(f) was amended to provide that the circuit courts, by writ of *certiorari*, could review all questions of law presented by the record and that judgments and orders of the circuit court could be reviewed by the supreme court upon a writ of error "which the

Supreme Court in its discretion may order to issue ***."
(1919 Ill. Laws 548.) Review of the judgments and or-
ders of the circuit courts by writ of error issued by this
court continued to be the method of review until the
adoption of the judicial article of 1962, effective in 1964.
Thereafter, until the adoption of Rule 22(g) and the
amendment of Rule 315(a), Rule 302(a) provided for di-
rect appeal to this court. The provisions for *certiorari*
and writ of error were completely different from those
applicable to appeals from decisions of the Commerce
Commission (see Ill. State Bar Stats. 1935, ch. 111a,
pars. 87, 88), which provided for appeals to the circuit
court and to the supreme court as in other civil cases.
We note further that the provisions of the Code of Civil
Procedure (Ill. Rev. Stat. 1983, ch. 110, par. 1—101 *et
seq.*) pertinent to the review of administrative decisions
(Ill. Rev. Stat. 1983, ch. 110, par. 3—101 *et seq.*) have
never been made applicable to decisions of the Industrial
Commission. In view of this lengthy history of special
treatment, we find apposite the statement of the Su-
preme Court in *New York Trust Co. v. Eisner* (1921),
256 U.S. 345, 65 L. Ed. 963, 41 S. Ct. 506. In *New York
Trust Co.* the Supreme Court, basing its decision on the
ground that such tax had always been treated as a duty
or excise and not as a direct tax, rejected the contention
that the estate tax was invalid as a direct tax not appor-
tioned as required by the Constitution. Mr. Justice
Holmes, speaking for the court, said: "Upon this point a
page of history is worth a volume of logic." 256 U.S.
345, 349, 65 L. Ed. 963, 983, 41 S. Ct. 506, 507.

In the adoption of rules governing appeals this court
must, as does a legislative body, act on the basis of ex-
pertise gained from its knowledge and experience. With
rare exception, in appeals involving decisions of the In-
dustrial Commission, the issues have been decided by an
arbitrator, reviewed by the Industrial Commission, and

reviewed again by the circuit court. This case, arising out of an injury suffered on November 7, 1975, demonstrates that under the existing statutory scheme and the provisions of Rule 302(a) prior to its amendment, claims for compensation were not being adjudicated in the expeditious manner contemplated by the Workers' Compensation Act (Ill. Rev. Stat. 1983, ch. 48, par. 138.1 *et seq.*; *Kelsay v. Motorola, Inc.* (1978), 74 Ill. 2d 172, 180-81; *O'Brien v. Rautenbush* (1956), 10 Ill. 2d 167). For the most part the delays are encountered prior to the cases reaching the circuit courts, but it is anticipated that the amendments to the Workers' Compensation Act effected by Public Act 83—1125 (eff. June 30, 1984) will expedite the decision of cases by the Commission. In view of the number of times the issues are decided prior to reaching that stage, we are of the opinion that any further extension of the litigation beyond the decision of the appellate court is warranted only if at least two members of the appellate panel make the statements required under Rule 315(a). Equal protection does not proscribe the treatment of different classes of persons in different ways; it requires only equal treatment of persons similarly situated. (*People v. La Pointe* (1981), 88 Ill. 2d 482, 500.) We find the provision reasonable and hold that it did not serve to deprive respondent of either equal protection or due process.

The parties have briefed and argued the question whether the circuit court erred in holding that the decision of the Industrial Commission was contrary to the manifest weight of the evidence. As earlier noted, we allowed leave to appeal to decide the question of the validity of Rules 22(g) and 315(a), and in the absence of the statement required by Rule 315(a) we do not deem it appropriate to review the contentions concerning the correctness of the decision of the Industrial Commission.

For the reasons stated, the judgment of the appellate

court is affirmed.

*Judgment affirmed.*

JUSTICE MORAN, dissenting:

When the order amending Supreme Court Rule 22 to create an "Industrial Commission division" of the appellate court was entered on February 1, 1984, I filed a heretofore unpublished dissent. For the reasons stated in that dissent I must also dissent in the present case. The previous dissent read as follows:

"While recognizing the desirability of reducing the workload of the Supreme Court in order that it can more freely 'exercise its discretionary leave to appeal jurisdiction by which important and novel issues of law could be determined ***' (6 Record of Proceedings, Sixth Illinois Constitutional Convention Committee Proposals 816), I find the court's order, with proposed rule changes, both invalid and contrary to our constitutional mandate to provide for expeditious and inexpensive appeals. (Ill. Const. 1970, art. VI, sec. 16.) I, therefore, respectfully dissent from the order creating a so-called "Industrial Commission division" of the appellate court.

I believe there are constitutional defects inherent in the order wherein it creates a special panel of various appellate court judges to hear all appeals, involving review of Industrial Commission cases, from final orders of any circuit court. The 1970 Constitution guarantees, as a matter of right, appeals from final judgments of the circuit court, to the '*** Appellate Court in the *Judicial District in which the Circuit Court is located* except in cases appealable directly to the Supreme Court ***.' (Emphasis added.) (Ill. Const. 1970, art. VI, sec. 6.) It is the duty of this court 'to construe the constitution so as to effectuate the intent of its drafters ***.' (*People v. Turner* (1964), 31 Ill. 2d 197, 199.) The order announced today, which allows this court to transfer Industrial Commission appeals to a special five-judge panel of the appellate court, circumvents the intent—in fact the clear language—of section 6 of article VI of the Constitution.

In addition, I find the court's approach constitutionally infirm on other grounds. Our constitution provides that '[t]he Supreme Court shall prescribe by rule the number of Appellate divisions in each Judicial District. Each Appellate division shall have at least three Judges. Assignments to divisions shall be made by the Supreme Court ***.' (Ill. Const. 1970, art. VI, sec. 5.) Section 16 of article VI authorizes '[t]he Supreme Court [to] assign a Judge temporarily to any court ***' in accordance with its '[g]eneral administrative and supervisory authority over all courts ***.' (Ill. Const. 1970, art. VI, sec. 16.) A combination of these provisions, however, does not authorize the court to change the basic three-tier structure of the court system which is comprised of 'a Supreme Court, *an* Appellate Court and Circuit Courts.' (Emphasis added.) Ill. Const. 1970, art. VI, sec. 1.

The creation of a special five-judge panel of the appellate court, with one judge from each of the five judicial districts, cannot be viewed as a constitutionally authorized creation of a new division within a judicial district. (Ill. Const. 1970, art. VI, sec 5.) Such a division would hear appeals only from final judgments of circuit courts within *its district*. The special panel, on the other hand, will have its jurisdiction *limited to Industrial Commission cases* and will hear *statewide* appeals of such cases regardless of the county of origin. This is most certainly not an appellate court created by article VI of our constitution but rather an entirely *new court* created by the order.

Our court has been confronted with an analogous situation in other cases. In *People ex rel. Rice v. Cunningham* (1975), 61 Ill. 2d 353 and *In re Contest of Election For Governor* (1983), 93 Ill. 2d 463, statutes which provided for special judicial panels were challenged and found unconstitutional. *Cunningham* involved the constitutionality of a former death penalty statute (Ill. Rev. Stat. 1973, ch. 38, par. 1005—8—1A). The statute required the chief judge of a circuit to assign three circuit judges, in a case where the death penalty was applicable, to determine if the death penalty was to be imposed. Not-

ing that the judicial article of the 1970 Constitution vests judicial power in 'a Supreme Court, an Appellate Court and Circuit Courts' (Ill. Const. 1970, art. VI, sec. 1) and makes no provision for legislative creation of new courts, the court held that 'the legislature ha[d] no constitutional authority to create a new court under article VI of the 1970 Constitution.' (*People ex rel. Rice v. Cunningham* (1975), 61 Ill. 2d 353, 359.) Similarly, the court in *In re Contest of Election for Governor*, following the rationale of *Cunningham*, held that a statute providing for the appointment of a three-judge panel to hear state-wide election contests was 'an attempt by the legislature to alter the basic character of the circuit courts, which *** the General Assembly was constitutionally prohibited from doing.' *In re Contest of Election for Governor* (1983), 93 Ill. 2d 463, 473.

As noted, the Supreme Court, unlike the legislature, is authorized to 'prescribe by rule the number of Appellate divisions in each Judicial District ***' [and make] [a]ssignments to divisions (Ill. Const. 1970, art. VI, sec. 5) or 'assign a Judge temporarily to any court ***.' (Ill. Const. 1970, art. VI, sec. 16.) Like the legislature, however, the court's authority must be carried out within the confines of our constitution. As such, the creation of any 'new' court, not enumerated in article VI, section 1, of the 1970 Constitution, I believe, is as unconstitutional an exercise of authority as attempted by the legislature in the above—cited cases.

In addition to the constitutional objections, I also disagree with the court's plan for practical reasons. The judicial article of the constitution of 1870 (article VI) was amended in 1962 and became effective January 1, 1964. The new judicial article was a 'major reform of the Illinois court system' guaranteeing the right of appeal in all types of cases, changing the jurisdictional grounds for mandatory direct appeal to this court and authorization to supplement, by rule, additional classes for direct review. (See Karasik, *A Special Appellate Court of Workers' Compensation Review: A Polite Proposal*, 71 Ill. Bar J. 44 (1982), discussing the historical basis for mandatory di-

rect appeal of Industrial Commission cases and suggesting alternative solutions to reduce the large number of such cases appealed to this court.) At the time, the legal community was anxious to elicit the support of the electorate for this new article. Organized labor was concerned that 'heterogeneous confusion' would result if appeals from Industrial Commission cases were heard by the five districts created by the new article. Support from these labor-oriented groups was obtained by assuring them direct review would be retained by the supreme court. (71 Ill. Bar. J. 44, 46, quoting 3 Angerstein, The Record of Petition for Writ of Error in Workmen's Compensation Cases, note 8, 2176.1, at 27 (pocket supplement).) This promise was fulfilled when this court provided by rule for direct appeal from circuit court final judgments of Industrial Commission orders (36 Ill. 2d R. 302).

In 1970 Illinois adopted a new constitution which became effective on July 1, 1971. It eliminated the mandatory direct appellate jurisdiction of the Supreme Court in all cases except those in which a sentence of death had been imposed but allowed the court to provide by rule for direct appeal in other cases. (Ill. Const. 1970, art. VI, sec. 4(b).) Thereafter, Rule 302 was amended to provide for direct review from final judgments of the circuit courts (1) in cases in which a statute of the United States or this State has been held invalid or (2) in proceedings to review orders of the Industrial Commission. (50 Ill. 2d R. 302.) On June 29, 1978 the court adopted an amendment to Rule 302 which abolished direct appeals from the circuit courts in proceedings to review orders of the Industrial Commission. This amendment was rescinded on the day it was to become effective, with Justice Clark and myself dissenting.

Under the present framework followed in Industrial Commission cases, it is not unusual for five, or more, years to elapse between the time of injury and final judicial resolution. Article VI, section 16, of the 1970 Constitution states that '[t]he Supreme Court shall provide by rule for expeditious and inexpensive appeals.' The court's

plan for assignment of Industrial Commission cases to the 'special panel' moves a step away, rather than toward, this objective. Presently, Industrial Commission litigants have available three levels of review, *as of right*. (Ill. Rev. Stat. 1981, ch. 48, pars. 138.19(a), (f).) A claim is first heard before an arbitrator (Ill. Rev. Stat. 1981, ch. 48, pars. 138.19(a), (d)). If the claim is pursued through all three levels of review, it first would go to the Industrial Commission (Ill. Rev. Stat. 1981, ch. 48, par. 138.19(e)), followed by review by summons in the circuit court (Ill. Rev. Stat. 1981, ch. 48, par. 138.19(f)(1), (2), as amended by Pub. Acts 83—360, 83—361, effective Sept. 14, 1983). The third level of review is by direct appeal to this court pursuant to Rule 302(a) (87 Ill. 2d R. 302(a)).

The order, along with its related supreme court rule addition, Rule 22(g), and amendments to Rules 302(a) and 315(a), will add a possible fourth level of review as litigants, dissatisfied with the outcome of the special appellate panel, petition for leave to appeal to this court via Rule 315. (87 Ill. 2d R. 315.) Admittedly, this last level of review will be limited by the proposed amendment to Rule 315(a) which applies only to Industrial Commission cases and requires 'two or more judges of that panel join in a statement that the case in question involves a substantial question ***.'[1] Nevertheless, a fourth level of review will still remain a strong possibility in a significant number of cases, further delaying resolution of issues which have already experienced a long and expensive process of review.

While I agree with my brethren that a solution to the ever increasing number of direct appeals in Industrial Commission cases in this court must be remedied, still I cannot, for the reasons stated, concur that the method to be applied is the correct legal solution. I suggest that the court could accomplish the desired result without exceeding constitutional limitations and at the same time provide a more 'expeditious and inexpensive' review of such cases. My suggestion would require legislation.

Section 6 of article VI of the 1970 Constitution provides that '[t]he Appellate Court shall have such powers

of direct review of administrative action *as provided by law.*' (Emphasis added.) (For example, see Ill. Rev. Stat. 1981, ch. 111½, par. 1041, wherein the General Assembly provided for direct review by the appellate court of orders entered by the Pollution Control Board. A similar legislative provision in the Workers' Compensation Act and the Workers' Occupational Diseases Act would eliminate reviews in the circuit courts.)

Further, while labor's concern over possible 'heterogeneous confusion,' created as a result of appeal to five judicial districts, may have been tenable 20 years ago, I find no merit to this position today. Any apprehension of diversity of interpretation by the five appellate districts has been eliminated, or greatly limited, by the enormous body of case law pertaining to Industrial Commission cases built up over the past years. I believe my suggested procedure would not only avoid one step in the review process (the circuit court), but also would allow leave to appeal to this court, pursuant to Rule 315 in its present form, to correct any alleged 'heterogeneous confusion' and thereby further the goal of expeditious and inexpensive appeals.

---

[1] I question the validity of the amendment to Rule 315(a), which limits the right of Industrial Commission litigants to appeal to this court. These parties will be the only class of litigants limited in their right to petition this court for leave to appeal."

In the case at bar the majority attempts to answer some of the objections noted in the above dissent, but I do not find these answers to be persuasive. The majority attempts to evade the mandate that circuit court judgments be appealed "to the Appellate Court in the Judicial District in which the Circuit Court is located" (Ill. Const. 1970, art. VI, sec. 6) by labeling the Industrial Commission court a "division" of the appellate court. This "division," however, is not a division within a particular judicial district but instead conveniently changes its district to fit the origins of whatever case is before it. For any given case, four of the five judges on the panel

will not be residents of the judicial district from which the case arises, despite the constitutional requirement that judges must be residents of the judicial unit for which they are selected. (Ill. Const. 1970, art. VI, sec. 11.) To allow a panel so constituted to be a division of any and every judicial district completely subverts the requirements of sections 6 and 11 of article VI of the Illinois Constitution.

Furthermore, the creation of the Industrial Commission division, as so constituted, is not a valid exercise of the Supreme Court's "administrative and supervisory authority over all courts" (Ill. Const. 1970, art. VI, sec. 16), even though this authority includes the power to "assign a Judge temporarily to any court" (Ill. Const. 1970, art. VI, sec. 16). This provision contemplates only temporary reassignments to alleviate backlogs, fill vacancies, or remedy similar temporary problems. The "Industrial Commission division," however, is not a temporary reassignment of judges to alleviate a temporary problem; it is a permanent court of limited jurisdiction operating wholly outside of the basic three-tiered structure of the court system as mandated by article VI, section 1, of the 1970 Constitution. The majority's attempt to distinguish *People ex rel. Rice v. Cunningham* (1975), 61 Ill. 2d 353, and *In re Contest of Election for Governor* (1983), 93 Ill. 2d 463, ignores the basic point made in those cases that neither the legislature nor this court may create a new court outside of the constitutional structure.

In addition, I continue to have serious doubts as to the validity of the amendment to Rule 315 which limits the right of litigants before the Industrial Commission division to petition this court for leave to appeal. While, as the majority notes, this court may provide different procedures and requirements for review, depending upon the nature of the case, in no other class of cases may the

Supreme Court's discretion to review a case be totally blocked by the action or inaction of the lower courts. The undesirability of such an arrangement is underscored by the fact that the court has already seen fit to ignore the rule in the case at bar, granting review even though there was no statement joined by two or more judges of the panel that the case in question involves a substantial question which warrants consideration by this court.

For the foregoing reasons I respectfully dissent.