In re CHARLES LEWIS, a Minor (The People of the State of Illinois, Petitioner-Appellee, v. Richard Lewis et al., Respondents-Appellants).

Fifth District   No. 5—85—0542

Opinion filed June 11, 1986.

Howard B. Eisenberg, of Southern Illinois University, of Carbondale, for appellants.

John R. Clemons, State's Attorney, of Murphysboro (Kenneth R. Boyle, Stephen E. Norris, and Susan M. Young, all of State's Attorneys Appellate Service Commission, of counsel), for the People.

JUSTICE WELCH delivered the opinion of the court:

On July 10, 1985, the circuit court of Jackson County entered an order terminating the parental rights of the respondents, Richard Lewis and Roxanna Broshears. On appeal, the respondents raise the following issues: whether the services provided by the Department of Children and Family Services (DCFS) were sufficient to meet the requirement of section 5—7(1) of the Juvenile Court Act (Ill. Rev. Stat. 1985, ch. 37, par. 705—7(1)) and whether the services offered were unsuccessful in rectifying the condition which led to the finding of unfitness. We affirm.

At the adjudicatory hearing on February 19, 1985, to determine whether the minor infant Charles Lewis (infant) was abused, the following evidence was adduced. On January 4, 1985, the 23-day-old infant was brought by ambulance to Memorial Hospital in Carbondale. When Dr. Jeffrey Mauldin examined the infant, he discovered that the infant had a broken left femur, multiple bruises on his body, lesions on his forehead, and burns on the bottom of his feet. Roxanna stated that the infant had fallen off a bed to the floor. She stated that the lesions and burns were the result of the infant's previous hospitalization at birth. Dr. Ralph Meeks, the radiologist who interpreted the infant's X rays, stated that there was a "mid-shaft spiral fracture of the left femur," caused by either a twisting or a blow to the area. Dr. William R. Hamilton, the pediatrician who saw the infant on January 4, 1985, and treated the infant at birth and the eight days following birth, stated that the infant's prior hospitalization did not cause the injuries to his head and feet. All three of the physicians stated that it is highly im-

probable that a fall from less than two feet would have caused a spiral fracture. They each agreed that even if the fall was obstructed, a spiral fracture would not have resulted. On February 26, 1985, the trial court entered its adjudication dispositional order finding the infant "has been abused and is now a ward of the Court" and continued temporary custody and guardianship with DCFS.

On April 29, 1985, a dispositional hearing was held to determine whether or not the respondents were unfit. At the hearing, among the facts adduced was the fact that on three occasions the law enforcement authorities were called out to the respondents' trailer court. On two of those occasions, the police were specifically called to the respondents' trailer and on the other occasion, they were called to a neighbor's trailer but the incident involved the respondents. On February 21, 1985, Roxanna signed a complaint against Richard for simple battery. On March 9, 1985, Roxanna did not sign a complaint. On March 17, 1985, Roxanna signed a complaint against Richard for aggravated battery. On that date he had broken a beer bottle during a heated argument and cut Roxanna on her cheek. At the hearing, the respondents stated that they would seek help.

After the hearing, the court found the parents unfit under section 1 of the Adoption Act, as required by section 5—9 of the Juvenile Court Act, on the following grounds of unfitness: (1) extreme cruelty to the child; (2) failure to protect the child from conditions within his environment injurious to the child's welfare; (3) depravity; (4) open and notorious adultery or fornication; and (5) failure by the mother to make reasonable efforts to correct the conditions which were the basis for the removal of the child from the respondents. (Ill. Rev. Stat. 1985, ch. 40, par. 1501; Ill. Rev. Stat. 1985, ch. 37, par. 705—9.) Although the court found the parents unfit, it reserved judgment on the termination of parental rights because it found that the requirement under section 5—7 of the Juvenile Court Act that appropriate services aimed at family preservation and family reunification be offered was not fulfilled. The court continued the hearing for 60 days. During that time, the court did not believe that the respondents could regain fitness but the respondents should be granted time to attempt to rectify the conditions.

On July 9, the court held the continued hearing to determine whether appropriate services aimed at family preservation and reunification were provided and whether these services were successful.

Wendy Manna, the DCFS social worker assigned as a follow-up worker on the respondents' case, testified. She stated that, on April 29, both of the respondents came to her office but she was unable to speak to them. Another meeting was arranged for May 2 but the re-

spondents failed to show up and they did not explain their absence. On May 2, she mailed a letter to them setting up a meeting for May 7. Again, no one showed. On May 8, Roxanna called and set up a visit on May 14 for a service planning conference and a visit with the infant. On May 14, both showed up and they devised a plan for reunification. There was disagreement as to what respondents and Manna believed were their problems. She told them their problem was alcohol abuse with domestic violence. However, the respondents believed that the problem was a lack of parenting skills. For both respondents, she set up psychological evaluations. For Roxanna, Manna was to initiate a referral to the Women's Clinic for Domestic Violence counseling. For Richard, Manna advised counseling at the Alcoholics Resource Center. Manna stated that the program was very simple and the respondents had agreed to the plan.

Manna and another DCFS worker set up the appointments for the psychological evaluation and provided transportation. She also sent a letter of confirmation of the dates to the respondents. The respondents made it to the first appointment. However, when their ride arrived for their second day of evaluation, they were still asleep and told the ride there was no test scheduled for that date. When Manna confronted Roxanna about the missed meeting, Roxanna told her a different story.

When Manna called the Alcoholics Resource Center to find out if Richard kept his May 21 appointment, she found that he had not. At the next regularly scheduled appointment with the respondent on June 3, Richard stated that he did not keep his appointment because he did not believe he needed any help. Later, Manna talked to the woman whom Roxanna was to see at the Women's Resource Center. She found out that Roxanna also failed to show up for her June 14 appointment.

The respondents failed to appear at another scheduled appointment of June 11, and they failed to notify her of any change of plans. No visit was planned for June 18 or 25 because the infant was out of town with his foster parents. The next scheduled visit was set for July 2. On July 2, only Richard came. On July 3, she visited with Roxanna at the respondents' trailer. Roxanna stated that she did not show up for her appointment because of her work schedule.

Altogether, the respondents visited Dr. Kathryn Hamilton twice for a psychological evaluation. They failed to show up for four of the seven scheduled visits with the infant and Manna. Roxanna only called for the second visit to tell Manna that she would be late. Richard missed his appointment with the Alcohol Resource Center and no others were planned during the 60-day period. Roxanna failed to show up for her initial appointment with the Women's Resource Center.

Dr. Kathy Hamilton, psychologist at the Counseling Center at Southern Illinois University, examined the respondents. She stated that although these tests were only preliminary, she was able to draw some conclusions. Regarding Richard, she stated that he had a consistent pattern indicating difficulty in managing aggressive impulses, difficulty in establishing close emotional attachments in significant figures, and an inability to establish an empathic feeling toward another. However, she stated that the evaluation was not an adequate measure of his personality. The tentative diagnosis was antisocial personality disorder. She stated that Richard is not prepared to handle a child of Charles' age. Dr. Hamilton stated that she could not offer any psychiatric diagnosis, not even a tentative one, regarding Roxanna. She did find a problem with impulse control and difficulty in mediating stress. She did not see evidence of any empathic responses toward a child's discomfort. Dr. Hamilton recommended against returning the infant to Roxanna. From both respondents, she found an unwillingness to participate in any psychotherapy and denial of their problems. She also found an inconsistency in their words and actions.

On July 10, the court entered its written order finding:

"That the parents have been given every opportunity for appropriate services aimed at family preservation and reunification of the family. The court finds that the parents have rejected the services and done nothing to rectify the conditions which lead to the child's abuse and that the court has explored alternatives short of parental termination but has found none. The court finds that it would be dangerous to permit the respondents to raise the minor Charles Lewis and that it is in the best interest of Charles Lewis that the parental rights and residual rights of Roxanna Broshears and Richard Lewis now be terminated and the court so orders. All done for the best interests of the minor child herein, Charles Lewis."

From this order the respondents appeal.

■ The respondents argue that the trial court did not properly find that all the requirements under section 5—7(1) of the Juvenile Court Act were met prior to terminating their parental rights to the infant. The respondents' contention concerns the construction of section 5—7(1) which provides:

"Sec. 5—7. Placement; legal custody or guardianship.

(1) If the court finds that the parents, guardian or legal custodian of a minor adjudged a ward of the court are unfit or are unable, for some reason other than financial circumstances alone, to care for, protect, train or discipline the minor or are

unwilling to do so, and that appropriate services aimed at family preservation and family reunification have been unsuccessful in rectifying the conditions which have led to such a finding of unfitness or inability to care for, protect, train or discipline the minor, and that it is in the best interest of the minor to take him from the custody of his parents, guardian or custodian, the court may

\* \* \*

(c) commit him to an agency for care or placement, except an institution under the authority of the Department of Corrections or of the Department of Children and Family Services;" Ill. Rev. Stat. 1985, ch. 37, pars. 705—7(1), 705—7(1)(c).

Initially, this court notes that section 5—7(1) of the Juvenile Court Act does not provide statutory guidelines from which to determine whether appropriate services were provided and were unsuccessful. However, the lack of statutory guidelines reflects the general principle that each case of termination of parental rights must be decided *sui generis*. (See *In re T.E.* (1984), 128 Ill. App. 3d 449, 452, 470 N.E.2d 1300, 1303.) Thus, the facts in this case are determinative. Furthermore, on appeal, a reviewing court will not reverse a trial court's determination in a termination proceeding unless it is palpably erroneous and contrary to the manifest weight of the evidence. See *In re T.E.* (1984), 128 Ill. App. 3d 449, 451, 470 N.E.2d 1300, 1302; *In re Hillyer* (1980), 82 Ill. App. 3d 505, 509, 403 N.E.2d 36, 39-40.

Under section 5—7(1), the court must first determine whether the parents are unfit. However, the respondents do not contest the finding of unfitness or the court's finding that the termination of their parental rights was in the best interests of the infant. Thus, this court will not examine the trial court's finding.

■ Next, under section 5—7(1), the court must determine whether "appropriate services aimed at family preservation and family reunification" were provided and were unsuccessful. For this determination, the following facts are relevant: (1) what type of service plan was set up by DCFS; (2) what efforts were made by the parents to complete the program; and (3) what was the severity of the conditions which led to the finding of parental unfitness.

■ First, to assess the type of program set up by DCFS, this court must look at how strenuous, demanding and difficult it was to complete, and at the time period allotted to give a true picture of the respondents' desire to rectify the conditions. In this case, Manna, the DCFS social worker assigned to the respondents' case, characterized the service plan as "a very simple plan."

The plan consisted of psychological evaluations for both respondents, a referral to the Women's Clinic for Roxanna to examine the issue of domestic violence, participation in individual and/or marital counseling after completion of the psychological evaluation, and weekly visitation with the minor child and with Manna in the DCFS office. Further, Richard agreed to obtain information about alcohol abuse at the Alcoholic Resource Center.

The plan was not excessively demanding or harsh. The court realized that the problems would not be cured in the 60-day period. Rather, the court wanted to see steps be taken to initiate treatment toward rectifying the conditions which led to the finding of parental unfitness. Furthermore, this court does not find weekly appointments to visit with their young son as a burden. In addition, DCFS did set up transportation to the psychological evaluations. This court does not find that the plan and its objective is so harsh considering the findings which precipitated the initiation of the service plan.

Next, the time period allotted is important. The plan covered 60 days. During that time period, the respondents were given an opportunity to show the court their desire to comply with the plan and start to rectify the conditions which led to the finding of unfitness. However, the respondents contend that a 60-day period of limited services is not sufficient "to establish a basis for permanently terminating the natural parental rights of the respondents." This court does not find the 60-day period based on the evidence in this case to be "ludicrous." First, the court did not expect the respondents to solve their problems. Second, the court did not find the services inappropriate or unsuccessful, but rather the respondents' response to the service plan was "apathy, irresponsibility and lack of cooperation." Since the respondents' only responsibility was to cooperate with the simple service plan set up by DCFS and to show willingness to correct deficiencies, this court finds that the 60-day period was sufficient.

Second, in determining whether the services were appropriate and unsuccessful, this court must look at the efforts made by the parents to complete the service plan. In evaluating the efforts, the amount of cooperation needed is equivalent to the conditions finding of unfitness. Thus, in this case, since the court found the infant was abused, more cooperation by the parents is to be expected. However, the record reveals a strong lack of cooperation, apathy, and irresponsibility by the respondents.

The respondents failed to show up for four of the seven scheduled visits with their minor son. Furthermore, neither of the respondents called to cancel any of the missed appointments or schedule new ones.

Roxanna stated that her lack of attendance was because of her lack of transportation and because of her work schedule. However, her lack of transportation did not prohibit her from working. Of significance is the fact that Roxanna stated that her lack of transportation was the result of her 10-speed bicycle having been destroyed in an accident. However, her excuse fails in light of the fact that her bicycle was destroyed prior to the initiation of the service plan and that she has been able to make it to work at least six days a week without the bike. She never complained about lack of transportation to work or about ever missing work because of transportation problems as she did regarding the appointment to see DCFS and most importantly to the visits with her child. Furthermore, while at work, she did not call DCFS to cancel appointments.

The record does not reveal Richard's excuse for missing the scheduled DCFS appointments. The record does reveal though that he is basically unemployed and does auto work on a job-to-job basis which does not take up his whole day or week. However, he did not show up for his May 21, 1985, appointment at the Alcoholic Resource Center. At the next regularly scheduled appointment, Richard stated that he did not keep the appointment because he did not believe he needed any help. By the end of the time period, Richard still had not met with anyone at the Alcohol Resource Center. Similarly, Roxanna missed her appointment with a counselor at the Women's Center to discuss the domestic violence.

The respondents did attend both days of the psychological evaluations. However, they missed the second day of the originally scheduled appointment. When their ride arrived, the respondents were still sleeping and denied that tests were scheduled for that day. However, Roxanna told a different story to Manna at DCFS. She stated that she was in the hospital because of an allergic reaction to an ant bite.

In light of the foregoing facts, the most significant fact is that at the April 29, 1985, hearing, the respondents stated they would cooperate with a service plan. Yet, their subsequent actions reveal to the contrary. However, the respondents argue that the time period was inadequate to show their desire to cooperate. This court does not find that a trial court abused its discretion by refusing to extend time periods where the party has already shown a disregard for authority, lack of cooperation, and apathy. This court does not find that if more services were offered or more time provided, they would have been able to show their desire to rectify the conditions. If the respondents could not fulfill weekly scheduled appointments and follow up initial appointments with appropriate counseling centers, it is hard to imagine that

the respondents would have done better with more appointments and sessions in a longer period of time.

Third, this court must look at the circumstances surrounding the finding of unfitness to determine whether the services offered were appropriate and unsuccessful. As stated in the previous determination, it would be reasonable to expect more effort by the parent where the facts underlying the finding of unfitness are more egregious.

At the hearing to determine abuse, the medical testimony presented by the State revealed that the 23-day-old infant Charles Lewis had sustained a fractured left femur. The injury was caused by a twisting or blow to the area of substantial force. All of the doctors stated that it was unlikely that the injuries could have been sustained by a fall, as Roxanna described, whether or not that fall was obstructed. Furthermore, the infant had bruises, lesions and abrasions all over his body and in various stages of healing.

The psychologists stated that both respondents had impulse control problems. Richard especially had difficulty managing aggressive tendencies. Richard's violent tendency is evidenced by the fact that on February 21, 1985, Roxanna signed a battery complaint against him. On March 17, 1985, Richard broke a beer bottle and cut Roxanna's cheek. On July 2, 1985, their argument necessitated the calling of law enforcement authorities to their trailer court. The psychologist also stated that both of them evidenced an inability to feel or express appropriate concern for the pain and discomfort their child had undergone. In view of the fact that the circumstances surrounding the termination were very egregious and the evidence of lack of cooperation by respondents was substantial, this court finds that the service plan was appropriate and unsuccessful.

Thus, in light of the record, the trial court properly found that all requirements of section 5—7(1) of the Juvenile Court Act had been met. Specifically, the trial court properly found that the services offered by DCFS were appropriate and adequate and were offered for a sufficient amount of time in which the respondents could show their desire to rectify the conditions that necessitated the finding of unfitness and eventual termination of parental rights. For the foregoing reasons, the judgment of the circuit court of Jackson County is affirmed.

Affirmed.

JONES and HARRISON, JJ., concur.