*In re* P.M., a Minor (The People of the State of Illinois, Petitioner-Appellee, v. L.M., Respondent-Appellant).

Fifth District   No. 5—90—0585

Opinion filed October 18, 1991.

Thomas W. Burkart, of Burkart Law Offices, of Hamel, for appellant.

William R. Haine, State's Attorney, of Edwardsville (Kenneth R. Boyle, Stephen E. Norris, and Rebecca Sanders, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE HOWERTON delivered the opinion of the court:

Respondent is 24 years old, is mentally retarded with an I.Q. of 60, and has the cognitive level of a seven-year-old. She is also a mother. The circuit court took her child from her, ruling that it was in his best interest, made him ward of the court, and placed him with a guardianship administrator of the Department of Children and Family Services (DCFS). We affirm.

Respondent's son was born premature. Concerned that respondent could not properly care for her son, the hospital contacted DCFS, which referred respondent to an agency that provided a home health care nurse to help with the child's needs; but, the child's needs were extraordinary: he could not keep food down and he was losing weight. Initially concerned that the child suffered from "failure to thrive" syndrome, DCFS placed the child in protective custody. Later he was adjudicated dependent (Ill. Rev. Stat. 1989, ch. 37, par. 802—4) and placed with a guardianship administrator. Ill. Rev. Stat. 1989, ch. 37, par. 802—27.

Respondent makes two claims on appeal: (1) that DCFS did not offer appropriate services for mentally retarded parents aimed at family preservation and family reunification as required by the Juvenile Court Act of 1987 (Ill. Rev. Stat. 1989, ch. 37, par. 802—27); and (2) that failure to provide appropriate services for mentally retarded parents while providing services for nonretarded parents violates her right to equal protection and due process of law.

To affirm a circuit court order terminating parental rights, a court of review must find in the record clear and convincing evidence that the parent is unfit. (*In re R.M.S.* (1989), 187 Ill. App. 3d 41, 542 N.E.2d 1323.) We find such evidence. Respondent, at the age of two, suffered a severe head injury when she was struck in the head by a

carnival ride. The injury left her with a severely diminished mental capacity, *i.e.*, she is borderline mentally retarded, with a full scale I.Q. of 60. Evidence in the record shows that respondent's son suffers from gastroesophageal reflux, a condition that makes it difficult to keep food down and impairs good nutrition. Also, preliminary neurological examinations show that respondent's son may have cerebral palsy and will require special attention and medication. These conditions, combined with evidence that respondent was not feeding her son regularly, was feeding him spoiled formula, and was feeding him from dirty bottles and with unsterilized nipples, clearly and convincingly show that respondent is unable to care for this child. The record also indicates that respondent loves her child and that she truly attempted to care for him, but our paramount concern must be the best interests of this child, interests best served, we believe, by the circuit court's order.

Respondent claims that services aimed at family preservation and family reunification offered to her pursuant to section 2—27 were not appropriate for a mentally retarded person, and that failure to provide appropriate services to her while providing appropriate services to nonretarded people violates her right to equal protection and due process of law.

The DCFS case worker testified at the dispositional hearing that nothing short of 24-hour supervision would protect respondent's child from danger. In other words, only 24-hour supervision—a service that does not exist—would preserve her family. Respondent claims that anything less would be a failure to offer "appropriate" services. We disagree. Though there are no statutory guidelines to determine whether appropriate services were offered and were unsuccessful (*In re Lewis* (1986), 144 Ill. App. 3d 55, 494 N.E.2d 261), we believe the unsoundness of respondent's argument is made clear by the following example.

If respondent were a pyromaniac and the only way in which to protect her child and preserve her family was to place a firefighter in her home 24 hours a day, no one would suggest that the State must offer such a service or violate the equal protection clause. There must be some limit to the extent of the State's obligation.

The sad reality is that some are less fortunate than others, so less fortunate that they, through no fault of their own, cannot care for a child. (See *In re Devine* (1980), 81 Ill. App. 3d 314, 401 N.E.2d 616.) Equal protection does not proscribe treatment of different classes of persons in different ways; it requires only equal treatment of persons similarly situated. (*Yellow Cab Co. v. Jones* (1985), 108 Ill. 2d 330, 483

N.E.2d 1278.) Here, we are dealing with one class of individuals, *i.e.*, parents, and not all parents are similarly situated, as this case illustrates. Faced with this reality, the circuit court properly granted guardianship, for there were no services that would make respondent a better parent. Although there are services that might help her keep the baby, such as a live-in, surrogate mother, these services do not exist and the State has no duty to create them for respondent's sole benefit.

The circuit court is affirmed.

Affirmed.

RARICK, P.J., and HARRISON, J., concur.