W. ROBERT BLAIR, Plaintiff-Appellant, v. BENJAMIN S. MACKOFF, Presiding Judge of the Domestic Relations Division of the Circuit Court of Cook County, *et al.*, Defendants-Appellees.

First District (3rd Division)   No. 1—95—1434

Opinion filed October 30, 1996.

Paul L. Feinstein, of Chicago, for appellant.

James E. Ryan, Attorney General, of Chicago (Barbara A. Preiner, Solicitor General, and Jan E. Hughes, Assistant Attorney General, of counsel), for appellees.

PRESIDING JUSTICE TULLY delivered the opinion of the court:
Plaintiff, W. Robert Blair, appeals from an order of the circuit court of Cook County granting the motion to dismiss of defendants, Benjamin S. Mackoff, presiding judge of the domestic relations division of the circuit court of Cook County, Illinois, and Richard Berland, judge of the domestic relations division of the circuit court of Cook County, Illinois, pursuant to section 2—619(a)(9) of the Code of Civil Procedure (735 ILCS 5/2—619(a)(9) (West 1994)). Jurisdiction is vested in this court pursuant to section 6 of article VI of the Illinois Constitution (Ill. Const. 1970, art. VI, § 6) and Supreme Court Rule 301 (155 Ill. 2d R. 301).
For the reasons that follow, we affirm.

## FACTUAL BACKGROUND

In 1990, Patricia Blair (hereinafter Patricia) filed a petition for dissolution of marriage against plaintiff in the circuit court of Cook County. The case was assigned to Judge Robert Berland. In the fall of 1991, Patricia was granted a voluntary dismissal.

In 1993, Patricia again filed a dissolution of marriage action against Robert. The case was randomly assigned to calendar B, Judge Aubrey Kaplan, pursuant to Circuit Court of Cook County General Order 15.3, which provides that each case filed in the circuit court's domestic relations division shall be assigned by the clerk of the circuit court to a calendar by random electronic process. Each judge in the domestic relations division is assigned to a team and to a calendar within each team. Each judge who works with preliminary matters is

assigned to a lettered calendar, and each trial judge is assigned to a numbered calendar.

After the initial assignment of the Blair matter, the case was reassigned to Judge Berland, pursuant to domestic relations division General Order 90-D-2, which provides that "cases between the same parties refiled in the Domestic Relations Division shall be transferred to the same preliminary [lettered] and/or trial [numbered] calendar on which the prior case was last pending regardless of the identity of allegations contained in the petition or the relief sought." General Order 90-D-2 took effect on June 12, 1990.

Abe's Log Cabin, Ltd., of which plaintiff owned a 51% controlling interest, had become involved in the litigation and filed a motion to substitute Judge Berland, which was heard on January 13, 1995. On that day Judge Berland granted the motion and assigned the case to the clerk of the circuit court for random electronic assignment to a preliminary calendar other than calendar E. Prior to the time that Judge Berland assigned the case to the clerk, he ruled on a number of motions in the case, including plaintiff's motion to dismiss for lack of subject matter jurisdiction, which he denied.

The case was then randomly assigned to team A, Judge Sheldon Gardner. Thereafter plaintiff filed a motion to substitute Judge Gardner as a matter of right. Judge Gardner granted the motion and transferred the case to the presiding judge for reassignment. The case was then randomly assigned to team C, Judge Philip Bronstein. Judge Bronstein heard plaintiff's motion to reconsider Judge Berland's earlier denial of plaintiff's motion to dismiss the case for lack of subject matter jurisdiction. Judge Bronstein found Illinois courts did have jurisdiction.

Thereafter, plaintiff filed a motion to reconsider Judge Bronstein's order that Illinois has subject matter jurisdiction. Plaintiff argued that he had become a resident of the Dominican Republic and that Patricia was a resident of Indiana. Plaintiff also argued that there was nothing for the court to adjudicate as he had previously obtained a divorce from Patricia in the Dominican Republic. All of the judges dealing with this issue found that the Dominican decree lacked integrity and refused to afford it comity.

Judge Bronstein conducted hearings during the months of February and March of 1995 on Patricia's motions for a temporary restraining order and a preliminary injunction to prevent plaintiff from withdrawing all assets from the jurisdiction. In March 1995, after a hearing, Judge Bronstein granted Patricia's motion for a preliminary injunction. At the hearing on Patricia's motion, plaintiff filed a motion to stay further proceedings, based on the instant litigation. Judge Bronstein denied plaintiff's motion for stay.

On December 9, 1994, plaintiff filed his complaint in the circuit court in this action against defendants. In his complaint, plaintiff asserted that General Order 90-D-2 was void because it contradicted other circuit court rules and because Judge Mackoff lacked the authority to issue it. Plaintiff sought a declaration that the general order was void and an injunction requiring Judge Mackoff to return the divorce case to Judge Kaplan and enjoining Judge Berland from taking any further action therein.

Judge Foreman denied plaintiff's request for a temporary restraining order. Judges Mackoff and Berland filed a motion to dismiss the complaint under section 2—619(a)(9) of the Code of Civil Procedure (735 ILCS 5/2—619(a)(9) (West 1994)), which the trial court granted. The instant appeal followed.

## ISSUES PRESENTED FOR REVIEW

On appeal, the issues are: (1) whether domestic relations division General Order 90-D-2 was properly promulgated; and (2) whether domestic relations division General Order 90-D-2 violates our state's constitutionally mandated separation of powers of the three branches of Illinois government.

## OPINION

As a preliminary matter, we address a motion to dismiss this action as moot filed in this court by defendants. Specifically, defendants urge that this action is moot because this court can no longer grant plaintiff any effectual relief. Defendants cite the fact that the relief which plaintiff sought in his complaint in this action, the enjoining of Judge Berland from taking any further action in the divorce case and the requiring of Judge Mackoff to return the case to Judge Kaplan, can no longer be granted as the dissolution of marriage action has been settled between the Blairs and a judgment entered therein.

■ In *HealthChicago, Inc. v. Touche, Ross & Co.*, 252 Ill. App. 3d 608, 610 (1993), the mootness doctrine was stated as follows:

> "It is a well-recognized principle of law that a reviewing court will decide only actual controversies in which the interests or rights of the parties to the litigation can be granted effectual relief. [Citation.] An appeal becomes moot when a court can no longer effect the relief originally sought by an appellant or when the substantial question involved in the trial court no longer exists. [Citation.] When a case is rendered moot, a court's decision on the merits cannot afford either party relief and any decision thus reached is merely an advisory opinion." *HealthChicago*, 252 Ill. App. 3d at 610.

See also *Dixon v. Chicago & North Western Transportation Co.*, 151

Ill. 2d 108 (1992). "Illinois courts do not issue advisory opinions and should not indulge in the practice of rendering opinions simply for the sake of creating precedents to govern future cases." *People v. Halasz*, 244 Ill. App. 3d 284, 285-86 (1993).

■ However, Illinois courts have recognized an exception to the mootness doctrine when a case has an issue of substantial impact on the public interest. *Madison Park Bank v. Zagel*, 91 Ill. 2d 231 (1982). "Among the criteria considered in determining the existence of the requisite degree of public interest are the public or private nature of the question presented, the desirability of an authoritative determination for the future guidance of public officers, and the likelihood of future recurrence of the question." *People ex rel. Wallace v. Labrenz*, 411 Ill. 618, 622 (1952).

■ We conclude that the public interest exception to the mootness doctrine is applicable to the case *sub judice* in that the three criteria of *Labrenz* are met. The issue of the constitutionality of General Order 90-D-2 is public in nature because it concerns a question of whether our constitutionally mandated separation of powers in state government is being violated by the circuit court of Cook County. Our resolution of the constitutional issue in this case will have an impact upon matrimonial litigants as well as clarify and further define the powers of the judiciary. An authoritative determination of the constitutional issue is desirable for the future guidance of the courts as well as government and private attorneys. Finally, this is a recurrent situation. Thus, given the importance of the issues presented in this case, the public interest would not be served by passing on it. That said, we now turn to the substantive issues of the case.

■ We note that our review of a section 2—619 motion to dismiss is *de novo*. See *Kedzie & 103rd Currency Exchange, Inc. v. Hodge*, 156 Ill. 2d 112 (1993).

■ Plaintiff first argues that the trial court erred in not finding that General Order 90-D-2 was promulgated without authority and therefore void. Specifically, plaintiff asserts that the general order is in conflict with General Order 15.3 and also Circuit Court of Cook County Rule 13.3(b)(i), which provides that "original petitions shall be assigned at random to a team of judges. Each team shall be identified by an alphabetical designation and shall hear all matters pertaining to that case. The calendar of the preliminary judge shall bear the alphabetical designation of the team." According to plaintiff, as General Order 90-D-2 contradicts General Order 15.3 and Rule 13.3(b)(i), it is void. We disagree.

General administrative and supervisory authority over all Illinois courts is vested in the Supreme Court of Illinois and shall be

exercised with its rules. Ill. Const. 1970, art. VI, § 16. In addition, our 1970 Constitution provides that "[s]ubject to the authority of the Supreme Court, the Chief Judge [of a judicial circuit] shall have general administrative authority over his court, including authority to provide for divisions, general or specialized, and for appropriate times and places of holding court." Ill. Const. 1970, art. VI, § 7(c). Section 1—104 of the Code of Civil Procedure also provides that, subject to the supreme court rules, circuit courts may make rules regulating their dockets, calendars and business. 735 ILCS 5/1—104 (West 1994). In accord with this is Supreme Court Rule 21(b), which provides that "[t]he chief judge of each circuit may enter general orders in the exercise of his general administrative authority, including orders providing for assignment of judges, general or specialized divisions, and times and places of holding court." 134 Ill. 2d R. 21(b). "Rule 21(b), adopted pursuant to section 7(c) of article VI of our constitution (Ill. Const. 1970, art. VI, sec. 7(c)), *** confers power on each chief judge to enter general orders for the assignment of judges, free from any express legislative limitations." *People v. Joseph*, 113 Ill. 2d 36, 46 (1986).

It is plaintiff's contention that Rule 21(b) merely permits assignment of judges to specific calendars and divisions and does not allow for the assignment of individual cases. We note that plaintiff cited no authority for this proposition and our research found nothing to support this position. Rather, we believe this argument is contradicted by the relevant case law.

In *People v. Hattery*, 183 Ill. App. 3d 785 (1989), this court found that the authority of the presiding judge of the criminal division of the circuit court of Cook County to assign a particular case flowed directly from the relevant provisions of the 1970 Illinois Constitution, supreme court rules, and a general order of the circuit court giving presiding judges general administrative powers, including the power to assign cases. Furthermore, the *Hattery* court held that a "presiding judge may personally assign judges to individual cases, or may use, at his discretion, administrative tools such as computers to facilitate efficient court administration." *Hattery*, 183 Ill. App. 3d at 801. This was true even where, as was the case in *Hattery*, the customary way to assign a case was by random computer assignment.

Similarly, in *People v. Joseph*, 113 Ill. 2d 36 (1986), our supreme court found that a judge designated by the chief judge of the ninth judicial circuit had the authority under the 1970 Illinois Constitution and Supreme Court Rule 21(b) (94 Ill. 2d R. 21(b)) to assign a postconviction petition to a particular judge.

Thus, contrary to plaintiff's unsupported argument, the determi-

nation of which judge will hear a particular case constitutes a wholly administrative, rather than substantive, matter. Accordingly, under the well-established principle that judicial power includes the administration of the courts (*People v. Felella*, 131 Ill. 2d 525 (1989)), this court has recognized that the judiciary possesses the constitutional authority to promulgate procedural rules to facilitate the discharge of its duties. *Davidson v. Davidson*, 243 Ill. App. 3d 537 (1993). The power to assign judges is one of the exclusive powers granted to the judiciary (*People v. Dixon*, 160 Ill. App. 3d 65 (1987)), and a chief judge's administrative authority to use it is subject only to the authority of the Illinois Supreme Court. *Hattery*, 183 Ill. App. 3d 785.

In light of the foregoing, we find that the chief judge of the circuit court of Cook County had and, consequently, Judge Mackoff, as the chief judge's duly authorized delegate, had the administrative power under our 1970 Constitution and Rule 21(b) to promulgate General Order 90-D-2 and that such power was properly exercised with respect to General Order 90-D-2. See *Joseph*, 113 Ill. 2d 36; *Hattery*, 183 Ill. App. 3d 785.

■ Furthermore, we reject plaintiff's contention that General Order 90-D-2 is in conflict with General Order 15.3 and Circuit Court of Cook County Rule 13.3(b)(i), which provide for the random assignment of original actions. General Order 15.3 and Circuit Court of Cook County Rule 13.3(b)(i) are completely silent on the handling of refiled petitions such as is the case here. Moreover, we believe General Order 90-D-2 is a necessary and altogether proper measure to prevent the type of forum shopping in matrimonial litigation that was evident from the record in the case *sub judice*.

■ Still to be considered is plaintiff's contention that General Order 90-D-2 is in violation of our 1970 Constitution's mandate that "[t]he legislative, executive and judicial branches are separate. No branch shall exercise powers properly belonging to another." Ill. Const. 1970, art. II, § 1. Specifically, plaintiff argues that General Order 90-D-2 is in conflict with sections 2—1001 and 2—1009 of the Code of Civil Procedure (735 ILCS 5/2—1001, 2—1009 (West 1994)). This contention is completely without merit.

First, we fail to perceive how General Order 90-D-2 is in conflict with section 2—1001, which provides for the substitution of judges. This argument is undermined by the facts of this very case. In no way was plaintiff impeded in exercising, through himself or his surrogate corporation, his rights under section 2—1001. Second, we again cannot see how General Order 90-D-2 is in conflict with section 2—1009, which provides for voluntary dismissals. A reassignment under General Order 90-D-2 does not impede a litigant's ability to

have a case dismissed without prejudice. Therefore, nothing in the order conflicts with the General Assembly's mandates in the Code of Civil Procedure or acts as an improper exercise of its legislative powers by the judiciary.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

CERDA and GALLAGHER, JJ., concur.