# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

*U.S. Bank, N.A. v. Dzis*, 2011 IL App (1st) 102812

---

| | |
|---|---|
| Appellate Court Caption | U.S. BANK, N.A., Plaintiff-Appellee, v. YAROSLAV DZIS, Defendant-Appellant. |
| | |
| District & No. | First District, Third Division <br> Docket No. 1–10–2812 |
| | |
| Filed | June 15, 2011 |
| Rehearing denied | July 29, 2011 |
| Modified | August 3, 2011 |
| Held <br><br> (*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | In a mortgage foreclosure action where plaintiff's counsel filed a motion for the appointment of a special process server on the same day the complaint was filed and attached to the motion a copy of a standing order entered two weeks earlier in which the court appointed four private detective agencies to act as special process servers for any mortgage foreclosure cases filed by plaintiff's counsel, but defendant was served by publication and then defaulted after one of the detective agencies presented affidavits detailing its unsuccessful attempts to serve defendant, the trial court properly denied defendant's motion to quash the service of process on the ground that the standing order for the appointment of a special process server violated the Illinois Constitution and several statutes, since the trial court's general order allowing law firms in mortgage foreclosure cases to obtain standing orders permitting them to arrange for certain detective agencies, rather than the sheriff, to serve process on defendants in mortgage foreclosure cases was within the scope of the presiding judge's authority, counsel followed the procedure established by the order, the order did not impermissibly privatize a service public officials usually perform, and the general order did not violate the rights to due process and equal protection of defendants in mortgage foreclosure cases. |

| | |
|---|---|
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 09–CH–032826; the Hon. Darryl B. Simko, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Law Offices of Christopher Kruger, of Evanston (Christopher Kruger, of counsel), Stephen Richek, of Chicago (Stephen Richek, of counsel), for appellant. |
| | Goldberg Kohn, Ltd., of Chicago (Steven A. Levy, David J. Chizewer, and Deborah Rzasnicki |
| Panel | JUSTICE NEVILLE delivered the judgment of the court, with opinion. Presiding Justice Quinn and Justice Steele concurred in the judgment and opinion. |

**OPINION**

¶ 1     This case centers on the validity of a general order entered by the presiding judge of the chancery division of the circuit court of Cook County. The general order allowed law firms to obtain standing orders permitting them to arrange for certain detective agencies, rather than the sheriff, to serve process on defendants in mortgage foreclosure cases. We hold that (1) the presiding judge had authority to enter the general order, (2) the order did not impermissibly privatize a service public officials usually perform, and (3) the general order did not violate the rights to due process and equal protection of defendants in mortgage foreclosure cases.

¶ 2                                          BACKGROUND

¶ 3     On April 23, 2008, U.S. Bank loaned Yaroslav Dzis $375,250 in exchange for a mortgage on property Dzis owned in Chicago. On September 10, 2009, U.S. Bank, through its lawyers, Codilis & Associates, sued to foreclose its mortgage. That same day Codilis filed a motion for appointment of a special process server. Codilis attached to the motion a standing order, entered about two weeks before U.S. Bank filed this lawsuit, in which the court appointed four private detective agencies to act as special process servers for any mortgage foreclosure cases filed by Codilis between August 25, 2009, and November 30, 2009. Based upon that order, one of the listed detective agencies attempted to serve process on Dzis at several locations, including the mortgaged property. The special process server

presented affidavits detailing all of its unsuccessful attempts to serve Dzis personally. From October 9, 2009, through October 23, 2009, the Chicago Daily Law Bulletin published notice of the foreclosure lawsuit.

¶ 4      The trial court entered a default order against Dzis because he failed to appear in response to the service by publication and the efforts to serve him personally. The court entered a judgment of foreclosure on February 26, 2010, setting the redemption period to end on April 28, 2010. On March 18, 2010, the Judicial Sales Corporation mailed to Dzis's addresses a notice of the impending foreclosure sale. The Judicial Sales Corporation sold the property to U.S. Bank at a public auction held on April 29, 2010.

¶ 5      Dzis first appeared in court on May 6, 2010. He moved to quash service of process on grounds that the standing order for appointment of a special process server violated the Illinois Constitution and several statutes, arguing that the court had no authority to enter an order for a special process server on August 25, 2009, two weeks before U.S. Bank filed its complaint against Dzis. Codilis explained that it followed the procedure established in General Administrative Order 2007-03 (the GAO) for using special process servers in mortgage foreclosure cases. The presiding judge of the chancery division entered the GAO in 2007.

¶ 6      The trial court denied the motion to quash, and on September 16, 2010, the court entered an order approving the sale of the property to U.S. Bank. Dzis now appeals.

¶ 7                            ANALYSIS

¶ 8                            Rule 341

¶ 9      At the outset, we note several improprieties in the brief Christopher Kruger filed on behalf of Dzis in this appeal. Kruger asserts, in the certificate of compliance attached to the brief, that the brief conforms to the requirements of subsections (a) and (b) of Supreme Court Rule 341. Ill. Sup. Ct. R. 341 (eff. July 1, 2008). He does not explain why he felt no need to comply with other subsections of Rule 341. The brief includes no statement of the issues presented (see Ill. S. Ct. R. 341(h)(3)) and no statement of jurisdiction (see Ill. Sup. Ct. R. 341(h)(4)). Because the brief includes no appendix (see Ill. S. Ct. R. 341(h)(9)), it also lacks a copy of the judgment and a table of contents of the record on appeal (see Ill. S. Ct. R. 342(a) (eff. Jan. 1, 2005)).

¶ 10      We adopt the pertinent reasoning from *Niewold v. Fry*, 306 Ill. App. 3d 735, 737 (1999):

> "The rules of procedure concerning appellate briefs are rules and not mere suggestions. [Citation.] It is within this court's discretion to strike the [appellants'] brief and dismiss the appeal for failure to comply with Rule 341 [citation]. [Citation.] However, *** because the record is not long and the issues are simple, we will not penalize the [appellant] so severely for the lapses of [his] counsel."

We choose to address the appeal on its merits despite the many ways in which the brief violates the rules. But appellate attorneys must remember that this court has discretion to dismiss an appeal when counsel fails to comply with the rules.

¶ 11             Jurisdiction and Standard of Review

¶ 12      Supreme Court Rule 301 (Ill. S. Ct. R. 301 (eff. Feb. 1, 1994)) gives this court jurisdiction to hear this appeal from the order approving the sale of the mortgaged property. See *In re Marriage of Verdung*, 126 Ill. 2d 542, 555 (1989).

¶ 13      On appeal Dzis argues only that the court should have quashed service of process. Because the court denied the motion to quash based solely on documentary evidence, we review the order denying the motion *de novo*. *Equity Residential Properties Management Corp. v. Nasolo*, 364 Ill. App. 3d 26, 31 (2006).

¶ 14      Dzis does not deny that Codilis followed the GAO when it obtained the standing order dated August 25, 2009, which apparently authorized Codilis to use the detective agency to serve process on Dzis. Dzis does not deny that the special process server followed established procedures for serving process on Dzis, and for using service by publication as a substitute when the special process server failed to serve process on the defendant personally. Dzis challenges only the validity of the GAO, arguing that the court lacked authority to enter the GAO and the GAO deprives mortgagors of procedural due process, substantive due process, and equal protection of the laws.

¶ 15                    Standing

¶ 16      U.S. Bank contends that Dzis lacks standing to challenge the GAO. The court obtained jurisdiction over Dzis through service by publication. The GAO set procedures only for having an approved agency serve process in certain cases; it had no effect on procedures for service by publication.

¶ 17      Our supreme court established the fundamental standard for determining whether a party has standing to challenge the actions of government officials. "*One who is adversely affected in fact by governmental action has standing to challenge its legality, and one who is not adversely affected in fact lacks standing.*" (Emphasis in original.) *Greer v. Illinois Housing Development Authority*, 122 Ill. 2d 462, 488 (1988).

¶ 18      Dzis claims that the GAO adversely affected him because the court would not have jurisdiction to foreclose the mortgage on his property but for the GAO. If the GAO here has no legal effect, then U.S. Bank never obtained the requisite permission to attempt service of process by a special process server in this case, and, therefore, U.S. Bank never properly attempted personal service on Dzis. Section 2–206 of the Illinois Code of Civil Procedure (Code) permits service by publication only when the plaintiff presents an affidavit showing that "the defendant resides or has gone out of this State, or on due inquiry cannot be found, or is concealed within this State, so that process cannot be served upon him or her." 735 ILCS 5/2–206 (West 2008). The trial court should not lend credence to an assertion that process cannot be served on a defendant if the plaintiff has not even attempted proper service of process. If the GAO did not validly permit Codilis to obtain an order for appointment of special process servers for all mortgage foreclosure cases Codilis filed between August 25, 2009, and November 30, 2009, then the trial court here should not have permitted service on Dzis by publication. Accordingly, we find that Dzis has standing to challenge the validity of the GAO.

¶ 19                          Authority to Enter the GAO

¶ 20    Supreme Court Rule 21(c) authorizes the chief judge of a circuit court to "enter general orders in the exercise of his or her general administrative authority." Ill. S. Ct. R. 21(c) (eff. Dec. 1, 2008). Illinois courts have interpreted the rule to permit the chief judge of a circuit court to delegate his authority to enter general orders to the presiding judges of the circuit court's divisions. *Blair v. Mackoff*, 284 Ill. App. 3d 836 (1996); *People v. Hattery*, 183 Ill. App. 3d 785 (1989). In *Blair*, 284 Ill. App. 3d at 843, the appellate court held that the presiding judge of the domestic relations division of the circuit court of Cook County had authority to promulgate a general administrative order, and in *Hattery*, 183 Ill. App. 3d at 800-01, the appellate court held that the presiding judge of the criminal division of the circuit court had similar authority. Accordingly, we hold that Rule 21(c) authorized the presiding judge of the chancery division to enter general orders in the exercise of her general administrative authority.

¶ 21    Dzis argues that the GAO conflicts with section 2–202 of the Code. The GAO provides:

> "For many years, service of summons in most mortgage foreclosure cases *** has been accomplished through the appointment of special process servers. Due to insufficient resources in personnel, equipment, and technological capabilities, the Sheriff of Cook County has been unable to effectuate service of process promptly and accurately in mortgage foreclosure cases.
>
> ***
>
> In the year 2006, mortgage foreclosure filings in the Circuit Court of Cook County increased from 16,494 (2005 filings) to 22,248. Based upon filings for the first five (5) months of the year 2007, it is estimated that mortgage foreclosure filings for the year 2007 will be in excess of 30,000 cases.
>
> Because of the increase in mortgage foreclosure filings and insufficient resources allocated to the Chancery Division's Clerk's Office, the Clerk of the Court has been unable to process promptly Motions for the Appointment of Special Process Servers and Orders Appointing Special Process Servers. *** In a significant number of cases it has taken the Clerk's Office between ten (10) and nineteen (19) days to process such papers. Because of the expiration of summonses, these processing delays have created significant problems for plaintiffs' attorneys and their clients. Attempts over the past year to remedy the delays in the Clerk's Office have proved unsuccessful.
>
> IT IS HEREBY ORDERED THAT:
>
> 1. Effective immediately, each law firm handling mortgage foreclosure cases in the Chancery Division may by Motion seek a Standing Order for the appointment of designated special process servers. Each Order will have a three (3) month or quarterly duration ***.
>
> 2. *** A law firm may designate one or more individuals or companies to serve as special process servers for each quarter of a year on all cases filed by that firm."

Section 2–202 provides:

"(a) Process shall be served by a sheriff, or if the sheriff is disqualified, by a coroner of some county of the State. *** The court may, in its discretion upon motion, order service to be made by a private person over 18 years of age and not a party to the action. It is not necessary that service be made by a sheriff or coroner of the county in which service is made. If served or sought to be served by a sheriff or coroner, he or she shall endorse his or her return thereon, and if by a private person the return shall be by affidavit.

(a–5) Upon motion and in its discretion, the court may appoint as a special process server a [certified] private detective agency ***." 735 ILCS 5/2–202 (West 2008).

¶ 22 Dzis asserts that section 2–202 requires the sheriff to attempt service first in every case, unless the court has specifically disqualified the sheriff from serving process in a particular case. The GAO, according to Dzis, violated section 2–202 because it makes some appointed companies the presumed process servers for mortgage foreclosure cases filed by law firms that have sought standing orders for appointment of designated special process servers.

¶ 23 We see no conflict between the GAO and section 2–202 of the Code. No provision in section 2–202 restricts the circuit court from finding the sheriff disqualified from service of process for a certain class of cases, like the mortgage foreclosure cases governed by the GAO.

¶ 24 Moreover, our supreme court has held that the courts and the legislature share authority to promulgate procedural rules, and the courts should seek "to reconcile, where possible, conflicts between rules of this court and legislative enactments." *O'Connell v. St. Francis Hospital*, 112 Ill. 2d 273, 281 (1986). However, "where a rule of this court on a matter within the court's authority and a statute on the same subject conflict, the rule will prevail." *People v. Cox*, 82 Ill. 2d 268, 274 (1980).

¶ 25 Dzis contends that the Code determines substantive rights, and therefore the court lacks the authority to alter statutory provisions concerning service of process. In support, Dzis cites *Danoff v. Larson*, 368 Ill. 519, 521-23 (1938), where the court said:

"No case has been called to our attention in which it has been held that the power to make rules of practice extends so far as to give a court power to prescribe the time or manner of serving initial process. ***

***

*** It seems clear to us that the means by which a person is summoned into court and subjected to its jurisdiction goes deeply into the substance of that person's rights, and is more than a mere matter of form. No matter what may be said as to routine procedure after the court has acquired jurisdiction over a defendant's person, it cannot be denied that the means of obtaining that jurisdiction goes to the very foundation of the principles of due process. Neither the judges of the municipal court nor of this or of any other court, has power to take jurisdiction over the person of a citizen without according him due process of law. Not even the legislature may otherwise provide. The determination of what constitutes due process of law is, in the first instance, a legislative function, limited by the constitution and subject to review

-6-

by the courts for a determination of whether or not the means provided satisfy the constitutional requirement. After jurisdiction of the person has been obtained by constitutional means, a different situation exists. The orderly and expeditious handling of the court's business requires the observance of rules which do not concern the substantive rights of the defendant, and we think that the power of the judges of the municipal court must be limited to this field."

¶ 26   We cannot reconcile *Danoff* with the court's more recent pronouncements in *In re Pronger*, 118 Ill. 2d 512, 524 (1987), where the court squarely held that "service of process is a matter of procedure." The court explained:

"[T]he manner of service of process is merely a step in obtaining jurisdiction of a person after he has been made a party to a suit. It is therefore a matter of practice or procedure and not a matter of substantive law." *Pronger*, 118 Ill. 2d at 523.

Pronger better accords with the reasoning of the United States Supreme Court, which held, "the manner and timing of serving process are generally nonjurisdictional matters of 'procedure' controlled by the Federal Rules." *Henderson v. United States*, 517 U.S. 654, 656 (1996). The Court held that to determine whether courts exceeded their powers by promulgating certain rules, "[t]he test must be whether a rule really regulates procedure,–the judicial process for enforcing rights and duties recognized by substantive law and for justly administering remedy and redress for disregard or infraction of them." *Sibbach v. Wilson & Co.*, 312 U.S. 1, 14 (1941).

¶ 27   Following *Pronger* and *O'Connell*, we hold that courts have the power to adopt procedural rules governing service of process, and the court's rules prevail over conflicting statutes. We note that our supreme court has amended its rules to provide expressly for service of papers by third-party commercial carriers. See Ill. S. Ct. Rs. 11(b)(4), 12(b)(3) (eff. Dec. 29, 2009). Therefore, the circuit court of Cook County did not usurp legislative powers when it entered the GAO.

¶ 28   Dzis argues that the circuit court exceeded its authority because the GAO privatizes work traditionally reserved for public servants. See, *e.g.*, *Colorado Ass'n of Public Employees v. Department of Highways*, 809 P.2d 988, 996-97 (Colo. 1991) (Colorado Department of Highways lacked authority to contract with private sector service providers for services historically performed by state personnel). But section 2–202 of the Code expressly provides for service of process by private service providers, and the GAO itself indicates that private companies historically served process in mortgage foreclosure cases, in accord with the Code. The GAO does not change who serves process for these cases, it only streamlines the procedure for the appointment of the private service providers. Therefore, we hold that the circuit court had authority to enter the GAO.


¶ 29                              Procedural Due Process

¶ 30   Dzis argues that the GAO violates his right to procedural due process. For such a claim, Dzis must first establish that the state has interfered with one of his liberty or property interests. *Segers v. Industrial Comm'n*, 191 Ill. 2d 421, 434 (2000). The circuit court established, in the GAO, that law firms could select detective agencies to serve process in

-7-

mortgage foreclosure cases, without going through the procedure for appointment of special process servers for each case individually. Thus, for Dzis to prevail on his procedural due process claim, he must show first that he has a liberty or property interest in having the court use the procedure for appointment of special process servers for each case individually, rather than having a single standing order apply to many cases. A litigant does not have a liberty or property interest in having a particular judge hear his case, and he has no liberty or property interest in any particular method of assigning judges to hear cases. *Hattery*, 183 Ill. App. 3d at 801-02. The litigant has even less interest in who serves him with process, and no cognizable interest in any particular method of choosing amongst statutorily qualified persons to select the person who serves him with process. The circuit court, by entering the GAO that adopted a particular procedure for selecting the qualified persons who may serve the defendant with process, had no effect on any of Dzis's cognizable property or liberty interests. Therefore, Dzis's procedural due process claim must fail.[1]

¶ 31                              Substantive Due Process

¶ 32     To show a violation of a substantive due process right, Dzis must show that the GAO deprives him of a fundamental right. *Bigelow Group, Inc. v. Rickert*, 377 Ill. App. 3d 165, 180 (2007). Dzis does not have a fundamental right to have a sheriff, rather than a properly qualified private person, serve process on him, nor does he have a right to have the qualified person who serves him with process chosen by any particular method. See 735 ILCS 5/2–202(a–5) (West 2008); *Hattery*, 183 Ill. App. 3d at 801-02. Thus, his substantive due process argument also fails.

¶ 33                               Equal Protection

¶ 34     Finally, Dzis argues that the GAO deprives homeowners of the equal protection of the laws. We evaluate a claim that a court rule denies a party equal protection by the same standards we use to evaluate a claim that a statute violates the equal protection clause. *Yellow Cab Co. v. Jones*, 108 Ill. 2d 330, 338-39 (1985). If a rule "neither burdens a fundamental right nor targets a suspect class, we will uphold the *** classification so long as it bears a rational relation to some legitimate end." *Romer v. Evans*, 517 U.S. 620, 631 (1996). The GAO creates special procedures for service of process in mortgage foreclosure cases. Thus, the GAO distinguishes the defendants in such cases, persons alleged to have defaulted on loans secured by mortgages, from all other persons named as defendants in civil lawsuits. The classification of civil defendants into a class of those defendants alleged to have defaulted on loans secured by mortgages, and a class of all other civil defendants, does not qualify as a suspect classification. See *McLean v. Department of Revenue*, 184 Ill. 2d 341,

---

[1]We note that the United States District Court for the Northern District of Illinois addressed a constitutional challenge to the GAO in an unpublished decision named *Gregory v. TCF Bank*, No. 09 C 5243, 2009 U.S. Dist. Lexis 115333 (N.D. Ill. Dec. 10, 2009). That court also concluded that the GAO did not violate the due process rights of defendants in foreclosure cases. *Gregory*, No. 09 C 5243, 2009 U.S. Dist. Lexis 115333, at *10.

354 (1998) (classification by wealth not a suspect classification).

¶ 35   According to the GAO, the sheriff of Cook County lacks the resources needed for prompt and accurate service of process in mortgage foreclosure cases. For many years, special process servers have filled the need for service of process in these lawsuits. The court sought to make the appointment of special process servers more efficient, particularly in light of the increasing need for service of process as mortgage foreclosure filings approximately doubled from 2005 to 2007. The GAO appears to expedite the appointment of special process servers, and thus it appears to improve the provision of timely notice of proceedings to defendants alleged to have defaulted on mortgages. We cannot say that the GAO lacks a rational basis. See *Wenger v. Finley*, 185 Ill. App. 3d 907, 916 (1989) (legislative classification had rational basis where legislature designed statute to make court administration more efficient).

¶ 36                               Petition for Rehearing

¶ 37   In his petition for rehearing, appellant argues that this court lacks jurisdiction over this matter, and he cites Supreme Court Rule 302(a) in support of his position. Ill. S. Ct. R. 302(a) (eff. Sept. 1, 2006). Rule 302(a) provides:

> "Appeals from final judgments of circuit courts shall be taken directly to the Supreme Court (1) in cases in which a statute of the United States or of this state has been held invalid, and (2) in proceedings commenced under Rule 21(c) of this court. For purposes of this rule, invalidity does not include a determination that a statute of this state is preempted by federal law." Ill. S. Ct. R. 302(a) (eff. Sept. 1, 2006).

¶ 38   Rule 21, as amended in 2008, now provides:

> "(c) *** The chief judge of each circuit may enter general orders in the exercise of his or her general administrative authority, including orders providing for assignment of judges, general or specialized divisions, and times and places of holding court.
>
> (d) *** Any proceeding to compel a person or agency other than personnel of the circuit court to comply with an administrative order of the chief circuit judge shall be commenced by filing a complaint and summons and shall be tried without a jury by a judge from a circuit other than the circuit in which the complaint was filed. The proceedings shall be held as in other civil cases." Ill. S. Ct. R. 21 (eff. Dec. 1, 2008).

¶ 39   When we interpret supreme court rules, we must apply the same principles that we use when we construe statutes. *Friedman v. Thorson*, 303 Ill. App. 3d 131, 135 (1999). Our supreme court delineated the principles applicable for statutory interpretation:

> "[W]hen the spirit and intent of the legislature are clearly expressed and the objects and purposes of a statute are clearly set forth, the courts are not bound by the literal language of a particular clause that might defeat such clearly expressed intent. ***
> [T]he judiciary has the authority to read language into a statute that the legislature omitted through oversight. [Citation.] Existing circumstances at the time the statute was enacted, contemporaneous conditions, and the object sought to be achieved all may be considered." *Collins v. Board of Trustees of the Firemen's Annuity & Benefit*

*Fund*, 155 Ill. 2d 103, 112 (1993).

¶ 40 In the 2008 amendment to Rule 21, our supreme court inserted a new subsection (b), and redesignated former subsections (b) and (c) as (c) and (d), respectively. Compare Ill. S. Ct. R. 21 (eff. Oct. 1, 1983) to Ill. S. Ct. R. 21 (eff. Dec. 1, 2008). Thus, when our supreme court last amended Rule 302(a) in 2006, the rule expressly referred to the subsection now designated as Rule 21(d) (Ill. S. Ct. R. 21(d) (eff. Dec. 1, 2008)), rather than the subsection now designated as Rule 21(c) (Ill. S. Ct. R. 21(c) (eff. Dec. 1, 2008)). Rule 302(a) then affected only final judgments in proceedings to compel persons or agencies to comply with administrative orders of the chief judges of the circuit courts, making those judgments directly appealable to the supreme court. Ill. S. Ct. R. 302(a) (eff. Sept. 1, 2006).

¶ 41 When our supreme court amended Rule 21 in 2008, it did not amend Rule 302(a) to account for the change in Rule 21. Nothing in the amendment to Rule 21 indicates that our supreme court intended to alter the procedure for appeal from judgments in proceedings brought to compel compliance with administrative orders of the circuit courts. In addition, nothing in the amendment to Rule 21 indicates that our supreme court chose to bypass appellate court review for all cases that involve general administrative orders issued under the current Rule 21(c). To accord with the intent of our supreme court, as expressed when it last amended Rule 302(a), we must interpret its reference to Rule 21(c) as a reference to the subsection now designated as Rule 21(d). Thus, our invocation of Rule 21(c) in our disposition of this appeal does not deprive this court of jurisdiction over this appeal.

¶ 42 We note that the language of Rule 302(a), literally applied to the current Rule 21(c), would not deprive this court of jurisdiction to consider this appeal. Rule 302(a) confers exclusive jurisdiction on the supreme court only for appeals in cases "commenced under" Rule 21(c). U.S. Bank commenced this proceeding to foreclose a mortgage. It did not commence this proceeding under Rule 21(c). Consequently, we deny the petition for rehearing.

¶ 43                                          CONCLUSION

¶ 44 Dzis has standing to challenge the GAO, because, if the court lacked authority to enter the GAO, U.S. Bank never properly served him with process. Supreme Court Rule 21(c) gave the chief judge of the circuit court the authority to enter general administrative orders, and the rule permits the chief judge to delegate his authority to the presiding judges of the divisions of the court. The court did not improperly privatize the service of process, as the Code expressly gives private persons the authority to serve process. Dzis has no property interest in having the sheriff, rather than a detective agency, serve him with process, and the change in the process server does not implicate a fundamental right. Thus, we reject Dzis's argument that the GAO violated his right to procedural and substantive due process. Because the presiding judge had a rational basis for adopting the GAO–to improve efficiency of service of process in mortgage foreclosure cases–the GAO did not violate Dzis's right to equal protection of the laws. Accordingly, we affirm the judgment of the trial court.

¶ 45 Affirmed.