# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

**Sewickley, LLC v. Chicago Title Land Trust Co.**, 2012 IL App (1st) 112977

---

| | |
|---|---|
| Appellate Court Caption | SEWICKLEY, LLC, Plaintiff-Appellee, v. CHICAGO TITLE LAND TRUST COMPANY, as Successor Trustee to LaSalle Bank N.A., f/k/a LaSalle National Bank as Trustee under a Trust Agreement dated May 16, 1996 and known as Trust Number 10-19496-09; JOHN ATHANS, LOULA ATHANS, THE LINCOLN RESTAURANT, INC., UNKNOWN OWNERS and NONRECORD CLAIMANTS, Defendants-Appellants. |
| District & No. | First District, Second Division<br>Docket No. 1-11-2977 |
| Filed | June 26, 2012 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | An order confirming the judicial sale of commercial real estate after a default judgment was entered against all defendants in a mortgage foreclosure action was upheld where the general administrative order by which service of process was obtained did not violate section 2-202 of the Code of Civil Procedure, no admissible evidence that the credit bid was inadequate was presented and inadequacy of a sales price, standing alone, does not provide a basis for not confirming a judicial sale. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 09-CH-44291; the Hon. John C. Griffin, Judge, presiding. |
| Judgment | Affirmed. |

Counsel on Appeal

Latimer LeVay Fyock, LLC, of Chicago (Robert S. Minetz and Darrow A. Abrahams, of counsel), for appellants.

Hauselman, Rappin & Olswang, Ltd., of Chicago (Steven R. Rappin and Peter A. Kowals, of counsel), for appellee.

Panel

PRESIDING JUSTICE QUINN delivered the judgment of the court, with opinion.

Justices Cunningham and Connors concurred in the judgment and opinion.

# OPINION

¶ 1    This is an appeal by the defendants to attempt to overturn the order that confirmed the judicial sale of the commercial real estate located at 4008 N. Lincoln Ave., Chicago, Illinois, held following a default judgment entered against all defendants and after defendants failed to raise objections at the hearing to confirm the sale. For the reasons that follow, we affirm.

¶ 2                                I. Background

¶ 3    A commercial loan was made to the defendant trustee on March 5, 2001 for $975,000. The note was secured by the real estate at 4008 N. Lincoln Ave., Chicago, Illinois.

¶ 4    About 8½ years later, on November 9, 2009, the bank commenced this action seeking foreclosure of the mortgage for failure to make any mortgage payments since July 5, 2009, leaving a principal balance due of $824,539.63 plus accrued interest and late charges.

¶ 5    The trustee, as well as other interested parties, John Athans, Loula Athans and The Lincoln Restaurant, were served on November 12, 2009 via the circuit court's general administrative order that was implemented to handle the high volume of service required in mortgage foreclosure cases. None of the defendants appeared, answered or filed a responsive pleading within the required 30 days of service.

¶ 6    On January 7, 2010, an attorney filed an appearance on behalf of the trustee, John Athans and Loula Athans. No appearance was filed on behalf of The Lincoln Restaurant. This was followed by a motion to quash service on the three defendants who appeared. The motion was denied on April 1, 2010. No answer or other responsive pleading was filed by defendants following the denial of their motion to quash service.

¶ 7    On June 10, 2010, the bank presented a motion for default. The three defendants filed a motion to strike. Following denial of that motion, the three defendants were given additional time to file an answer until July 30, 2010. No answer or other responsive pleading was filed.

¶ 8    On September 2, 2010, the bank again presented a motion for default. Again, the three

-2-

defendants were granted another extension of time to file a responsive pleading. Again, no responsive pleading was filed.

¶ 9    On October 13, 2010, the bank again presented its motion for default. That day, the court entered an order of default judgment against all defendants and a judgment of foreclosure and sale.

¶ 10    On December 12, 2010, the bank assigned its interests in the mortgage to Sewickley, LLC. A judicial sale was held on January 14, 2011, which produced a single and, therefore, highest bid of $300,000 from Sewickley, LLC, as a credit bid.

¶ 11    On February 10, 2011, the defendants' attorney filed an additional appearance on behalf of the fourth defendant, The Lincoln Restaurant. On February 15, 2011, he filed a motion to quash service which was made back on November 12, 2009 in the same manner as the other three defendants. The Lincoln Restaurant's motion mirrored the one that was filed on behalf of the other three defendants that the court denied back on April 1, 2010. The court reiterated its position on service of process and denied this motion, as well.

¶ 12    On February 15, 2011, Sewickley, LLC, presented its motion to substitute as the party plaintiff based on the assignment it received from the bank. It also moved for an order approving the sale that was generated at the judicial sale on January 14, 2011 and for an order of possession because no defendant had paid on the mortgage since July 2009. The defendants, John Athans, Loula Athans and the trustee, filed their motion for procedural due process and to void the judgments of foreclosure and sale, the orders of default, the judicial sale and all related orders. The court allowed all defendants an additional 14 days to respond to the motion to substitute Sewickley, LLC, as the party plaintiff and the motion to confirm the judicial sale of January 14, 2012.

¶ 13    On May 10, 2011, John Athans, Loula Athans and the trustee filed a request for a third extension of time to file a response to the motion to confirm the January 14, 2011 judicial sale. At this time, defendants argued they needed the additional time to prepare a fully supported argument regarding the difference between the sales price and the value of the property determined by an appraiser. Defendants attached a cover page and a valuation page from an appraisal that was at least 90 pages in length in support of their third request for an extension of time. Despite being granted this third extension, none of the defendants filed a response or objection to plaintiff's motion to confirm the judicial sale.

¶ 14    On June 13, 2011, defendants John Athans, Loula Athans and the trustee filed a joint response to the motion to substitute Sewickley, LLC, as the plaintiff and the motion to place the mortgagee in possession. Defendants never filed any written objections to plaintiff's request for a court order confirming the judicial sale despite being given four months to do so. On June 17, 2011, after a hearing, the circuit court entered an order that (1) granted the motion to confirm the judicial sale of $300,000; (2) granted the petition to substitute Sewickley, LLC, as the plaintiff; (3) granted the petition to place the mortgagee in possession; (4) granted plaintiff's motion to quash discovery; and (5) denied defendants' motion to compel discovery and for sanctions against plaintiff.

¶ 15    One month later, on July 18, 2011, John Athans, Loula Athans and the trustee filed a joint motion for rehearing and reconsideration which alleged, for the first time directly, that

the credit bid at the judicial sale was an inadequate price. Defendants utilized the same two-page excerpt of an alleged appraisal that they used to secure their third extension of time to respond to plaintiff's motion for confirmation of the sale. Defendants also alleged that there were discrepancies by the officer who conducted the judicial sale sufficient for the court to justify vacating the court's order of June 17, 2011 approving the judicial sale on grounds that justice was not done. This motion for rehearing and reconsideration was denied by the circuit court as being procedurally too late and substantively lacking.

¶ 16                        II. Argument That Service of Process Was Faulty
¶ 17                              A. Standard of Review
¶ 18    Although this district has recently issued two opinions resolving the issue that appellants raise–whether service of process via General Administrative Order (GAO) 2007-03 involving mortgage foreclosure cases violates section 2-202 of the Illinois Code of Civil Procedure (735 ILCS 5/2-202 (West 2008))–this panel has the right to disagree with other panels and has the duty to review the issue *de novo* to reach a decision. *In re Austin D.*, 358 Ill. App. 3d 794, 799 (2005).

¶ 19                                  B. Analysis
¶ 20    The GAO being challenged by the defendants provides, in pertinent part, as follows:

"Because of the increase in mortgage foreclosure filings and insufficient resources allocated to the Chancery Division's Clerk's Office, the Clerk of the Court has been unable to process promptly Motions for Appointment of Special Process Servers and Orders Appointing Special Process Servers. ***

IT IS HEREBY ORDERED THAT:

    1. Effective immediately, each law firm handling mortgage foreclosure cases in the Chancery Division may by Motion seek a Standing Order for the appointment of designated special process servers. Each Order will have a three (3) month or quarterly duration ***."

¶ 21    Defendants' argue that the GAO 2007-03 directly conflicts with section 2-202 of the Illinois Code of Civil Procedure, which states, in pertinent part, as follows:

"(a) Process shall be served by a sheriff, or if the sheriff is disqualified, by a coroner of some county of the State. *** The court may, in its discretion upon motion, order service to be made by a private person over 18 years of age and not a party to the action. It is not necessary that service be made by a sheriff or coroner of the county in which service is made. If served or sought to be served by a sheriff or coroner, he or she shall endorse his or her return thereon, and if by a private person the return shall be by affidavit.

    (a-5) Upon motion and in its discretion, the court may appoint as a special process server a [certified] private detective agency ***." 735 ILCS 5/2-202 (West 2008).

¶ 22    Defendants argue that the circuit court erred when it held that it had jurisdiction over the defendants. Defendants allege that they were not served with process according to applicable

Illinois law because service was effectuated via the circuit court's GAO 2007-03, which allows the mortgagee's law firm to serve process in foreclosure cases using private detectives rather than by the sheriff or by motion pursuant to section 2-202 of the Illinois Code of Civil Procedure. 735 ILCS 5/2-202 (West 2008). This district has previously addressed this issue and ruled that a mortgagor has no liberty or property interest in who serves him with process in a foreclosure action. Further, this district has previously held that a mortgagor's procedural due process rights are not violated by the circuit court's general administrative order that allows the mortgagee's law firm to effectuate service of process in foreclosure cases by using private detectives rather than the sheriff. *U.S. Bank, N.A. v. Dzis*, 2011 IL App (1st) 102812. This panel adopts the reasoning and conclusion on this issue as stated succinctly by the *Dzis* court. *Id.* We decline the defendants' invitation to reject the *Dzis* court's analysis. Both parties fail to mention that the *Dzis* holding was recently followed by another panel of this district in *OneWest Bank, FSB v. Markowicz*, 2012 IL App (1st) 111187. Having reviewed the arguments made by the parties *de novo* in the instant case, which are identical to the issues raised in *Dzis* and *Markowicz*, we see no reason to deviate from either the *Dzis* or *Markowicz* opinion on this issue. We find that the mortgagor has no liberty or property interest in who serves him with process in a foreclosure action. The mortgagor's procedural due process rights were not violated by the circuit court's general administrative order that allowed the mortgagee's law firm to serve process in this foreclosure case by utilizing a private detective rather than the sheriff. Service was properly made under GAO 2007-03.

¶ 23 The remaining issues concern this foreclosure action's judicial sale of the property, the credit bid on the property and the eviction of tenants John and Loula Athans, and The Lincoln Restaurant.

¶ 24 III. The Circuit Court's Approval of the Judicial Sale

¶ 25 A. Standard of Review

¶ 26 A circuit court's decision to confirm or reject a judicial sale held pursuant to the Illinois Mortgage Foreclosure Law (735 ILCS 5/art. XV (West 2008)) will not be disturbed absent an abuse of discretion. *Household Bank, FSB v. Lewis*, 229 Ill. 2d 173, 179 (2008); *Mortgage Electronic Registration Systems, Inc. v. Barnes*, 406 Ill. App. 3d 1, 4 (2010).

¶ 27 B. Analysis

¶ 28 Our analysis of whether a circuit court properly approved a sale of property arising out of a mortgage foreclosure lawsuit is governed by section 15-1508(b) of the Illinois Mortgage Foreclosure Law, which states, in pertinent part:

"Upon motion and notice in accordance with court rules applicable to motions generally, which motion shall not be made prior to sale, the court shall conduct a hearing to confirm the sale. Unless the court finds that (i) a notice required in accordance with subsection (c) of Section 15-1507 was not given, (ii) the terms of sale were unconscionable, (iii) the sale was conducted fraudulently or (iv) that justice was otherwise not done, the court shall then enter an order confirming the sale." 735 ILCS 5/15-1508(b) (West 2010).

¶ 29    The above-quoted section was intended to create a new, but limited, level of inquiry of foreclosure sales and was not intended to require an evidentiary hearing after each sale. *Resolution Trust Corp. v. Holtzman*, 248 Ill. App. 3d 105, 114-15 (1993). The extent of the hearing afforded a mortgagor or other interested party objecting to the sale is left to the sound discretion of the trial court. *Deutsche Bank National v. Burtley*, 371 Ill. App. 3d 1, 5-6 (2006).

¶ 30    In the instant case, defendants entered into their commercial loan/mortgage approximately 11 years ago. The mortgage was secured by property located within the City of Chicago where real estate values have significantly increased and then decreased during those 11 years.

¶ 31    At the judicial sale on January 14, 2011, the credit bid of $300,000 for the property was the sole and highest bid.

¶ 32    Although this case had been pending for over one year prior to the judicial sale, defendants never filed any defense to the mortgage foreclosure action despite filing for numerous extensions of time to do so. Default judgments were properly entered against all defendants. The next logical step was a judicial sale. The many extensions of time defendants secured for filing a responsive pleading could have been spent refinancing the mortgage or defendants could have secured a buyer for the property on their own. Defendants could have requested that the plaintiff market the property by an agent in order to attempt to get bidders interested in the property for the inevitable judicial sale. Defendants could have submitted to the plaintiff and/or the court prior to the sale an appraisal estimating their view of the property's fair market value. There is no evidence that the defendants took any of these measures, even though they knew that they were not meeting their financial obligations under the mortgage agreement.

¶ 33    With full knowledge of this pending mortgage foreclosure action, which could likely end in a judicial sale, there is no evidence that defendants did much of anything other than attempt to delay the sale and change in possession through their numerous requests for extensions of time to file a responsive pleading, which was never filed. From the time this suit was filed until the judicial sale, defendants had over a year to do something. Instead, defendants had the benefit of possession and use of the premises from the default date of July 5, 2009, until the present without paying anything on this mortgage loan agreement. There is and has been a strong interest by the mortgagee in resolving this defaulted debt. There is also a public policy interest in getting new ownership for this property so as to prevent deterioration of the asset.

¶ 34    There are many well-recognized factors that negatively affect the amount parties are willing to bid on properties that are judicially sold as a result of a judgment of foreclosure, not the least of which are the overall ascertainable condition of the property, the inability to perform an inspection of the interior condition of the property, any possible tax liens and other liens against the property and the lack of any provision of title insurance. Consequently, it is usually the norm that " 'property does not bring its full value at forced sales, and that price depends on many circumstances from which the debtor must expect to suffer a loss.' " *Illini Federal Savings & Loan Ass'n v. Doering*, 162 Ill. App. 3d 768, 772 (1987) (quoting

*Horney v. Hayes*, 11 Ill. 2d 178, 184-85 (1957)).

¶ 35       Under Illinois law, a judicial foreclosure sale is complete once it has been approved by the trial court. *Fleet Mortgage Corp. v. Deale*, 287 Ill. App 3d 385, 388 (1997). At a hearing to confirm a judicial sale, the court is bound by the Illinois Mortgage Foreclosure Law, which provides that the trial court shall confirm the judicial sale unless: (1) proper notice was not given; (2) the terms of the sale were unconscionable; (3) the sale was conducted fraudulently; or (4) justice was otherwise not done. 735 ILCS 5/15-1508(b) (West 2008); *Commercial Credit Loans, Inc. v. Espinoza*, 293 Ill. App. 3d 923, 927 (1997). The plaintiff filed a properly supported motion to confirm the sale and noticed it for a hearing. At that point, the interested party opposing the sale bears the burden of proving that grounds exist sufficient for the trial court to not enter an order approving the sale. *Deutsche Bank National v. Burtley*, 371 Ill. App. 3d 1, 6-7 (2006).

¶ 36       The defendants in this case never raised their arguments or objections at the hearing held by the court to approve the judicial sale. The fact that defendants failed to raise their arguments that the credit bid was unjustly entered or that the sole bid on the property did not reflect the property's fair market value supports affirming the circuit court's decision to deny defendants' motion for reconsideration. A court is well within its authority to not disrupt a judicial sale, especially one that has already been approved after a hearing, because of a party's negligence in not making its arguments sooner. *Grubert v. Cosmopolitan National Bank of Chicago*, 269 Ill. App. 3d 408, 410 (1995) (citing *Abbott v. Beebe*, 226 Ill. 417, 420 (1907)). It is true that a showing of a strong public interest may support disrupting a judicial sale. *In re Application of Rosewell*, 236 Ill. App. 3d 473, 477-78 (1992). However, no such strong public interest argument was presented by the defendants in this case.

¶ 37       To allow defendants to raise an objection to the purchase price after they had been given more than ample time to object and after a hearing and the judicial sale had been approved by the circuit court would do our judicial process a disservice. To allow defendants to raise objections to the judicial sale for the first time in a motion for rehearing and reconsideration would require this court to ignore long-standing precedent on how issues are litigated both in the circuit court and before this court. *Caywood v. Gossett*, 382 Ill. App. 3d 124, 134 (2008) (arguments presented to a trial court for the first time in a motion to reconsider are deemed waived); *North River Insurance Co. v. Grinnell Mutual Reinsurance Co.*, 369 Ill. App. 3d 563, 572 (2006) (improper to raise either new legal theories or new factual arguments in motion for rehearing). Furthermore, the Illinois Mortgage Foreclosure Law provides that "no sale *** shall be held invalid or be set aside because of any defect *** except upon good cause shown in a hearing pursuant to subsection (b) of Section 15-1508." 735 ILCS 5/15-1508(d) (West 2010). Defendants, despite being given ample opportunity, failed to provide any evidence at the hearing held by the court pursuant to subsection (b) of section 15-1508 on June 17, 2011, and certainly failed to provide the court with evidence to support any reason, good cause or otherwise, as to why the judicial sale should not be approved. Failure to oppose a proposed order to confirm the regularity of a judicial sale constitutes a waiver of the objections to the four enumerated statutory exceptions. *Deutsche Bank National v. Burtley*, 371 Ill. App. 3d 1, 5-7 (2006).

¶ 38       At the judicial sale, the credit bid for $300,000 was the sole and highest bid. Defendants'

two-page exhibit attached to their motion for rehearing and reconsideration is lacking. It is the identical exhibit the defendants attached to justify their third request for an extension of time of the hearing date on plaintiff's motion for approval of the judicial sale in order to file their objections. In keeping with the defendants' prior practice of inaction following the grant of extensions of time, defendants' objections to the judicial sale never materialized.

¶ 39 In any event, the exhibit appears to be a cover page and a one-page excerpt from an appraisal that is at least 90 pages in length. If defendants were serious about being forthright in their objection to the confirmed judicial sale at such a late date, it is puzzling why they did not provide the entire appraisal report, along with a testament from the appraiser certifying its authenticity. It is impossible for anyone to evaluate these two conclusory pages and come to any reasonable conclusion about the fair market value of the property in question. In fact, nothing is disclosed about the appraiser or his credentials. The defendants did not even attach the comparable properties, if any, that the appraiser used in arriving at his figure for the worth of the property. No one, from looking at the two pages, would be able to evaluate whether the conclusion of the appraiser is in any way an accurate reflection of the property's fair market value. Other than the two pages from a document that is at least 90 pages long and allegedly prepared by their appraiser and attached to their motion requesting a third extension of time, defendants offered no evidence or argument to suggest that the credit bid of $300,000 was unjust prior to the court's order confirming the sale. The defendants used the identical exhibit to try to justify a rehearing and reconsideration even though they passed up their chance to object at the hearing to confirm the sale.

¶ 40 The defendants' final argument is that the trial court erred in confirming the sale because "justice was otherwise not done." The defendants waived this argument, as well, as it was not properly raised at the hearing. As support for this argument they rely, in part, on *Levy v. Broadway-Carmen Building Corp.*, 366 Ill. 279 (1937). In *Levy*, the principal stockholder of Studebaker Sales Company of Chicago bought property at 5100 N. Broadway for $135,000 in 1926 to utilize as an auto dealership. In 1933, a foreclosure court ordered that the property be sold at public auction. Broadway-Carmen made a bid of $50,000, which the master in chancery court approved. Levy objected. Both parties presented evidence of value. Levy submitted affidavits supporting a value between $77,000 to $80,000. Broadway-Carmen submitted affidavits fixing the value of the property at from $40,000 to $50,000. The chancellor initially ordered that the sale be approved but subsequently ordered a resale of the property at an upset price of $80,000. The appellate court affirmed. The supreme court reversed the appellate court.

¶ 41 The supreme court reviewed the facts of the case as presented to the chancellor and held:

"This testimony did not warrant the chancellor in finding that these premises were worth $80,000. Although the property had been sold, before the panic, for $135,000, the value of real estate was greater then than at the time of the master's sale. The proof did not sustain a greater value than $50,000 at the time of the sale, but if it be assumed that this was somewhat inadequate, the fact that there was a depressed market for real estate would not [be] a sufficient circumstance, coupled with the supposed inadequacy in the bid, to warrant the chancellor in disapproving the master's sale. The power to disapprove a sale for gross inadequacy of bid exists independent of an economic depression. The

-8-

chancellor abused his discretion and erred in refusing to approve the sale at $50,000." *Levy*, 366 Ill. at 292.

¶ 42    Our courts today face a similar situation as that faced by the court in *Levy* during the Great Depression, in that many properties were purchased during a time when real estate values greatly increased (referred to as "the real estate bubble") and those same properties plummeted in value after 2006 continuing to the present. Consequently, many property owners owe much more to the lenders than what the property is worth. While this fact is unquestionably tragic, the value of a given piece of property must be determined by considering all of the pertinent factors as they exist at the time of the sale, whether such sale is made in the open market or through a judicial sale as the result of a foreclosure action. *Resolution Trust Corp. v. Holtzman*, 248 Ill. App. 3d at 114.

¶ 43    In the instant case, the sales price of $300,000 was never shown to be grossly inadequate through any admissible evidence. Certainly, it is well settled that inadequacy of sales price alone is an insufficient basis for a trial court to not confirm a judicial sale. *Resolution Trust Corp. v. Holtzman*, 248 Ill. App. 3d at 113-14. That factor should be combined with some other facts, such as evidence of fraud, mistake or violation of the duty of the officer conducting the sale, to afford relief. *Id.*; *Illini Federal Savings & Loan Ass'n v. Doering*, 162 Ill. App. 3d 768, 771-72 (1987).

¶ 44    For instance, in *Fleet Mortgage Corp. v. Deale*, 287 Ill. App. 3d 385 (1997), the plaintiff mistakenly proceeded with a foreclosure sale when the defendants had already exercised their right to redeem and sold the property to another party for the full judgment amount. *Fleet*, 287 Ill. App. 3d at 386-87. In *Commercial Credit Loans, Inc. v. Espinoza*, 293 Ill. App. 3d 923, 927 (1997), a case cited by the defendants, the trial court relied on the fact that defendant-mortgagor's repeated requests about what steps to take to redeem the property were shrugged off. When coupled with a sales price that represented one-sixth of the property's proven, fair market value, it tipped the scales of justice in favor of not confirming the judicial sale. These types of factors are not present in the instant case. In fact, defendants never presented any admissible evidence that the credit bid was inadequate either at the hearing or in their motion for reconsideration.

¶ 45    Defendant, The Lincoln Restaurant, argues that because the order entered by the circuit court approving the report of sale and distribution did not include that The Lincoln Restaurant may be evicted, this constitutes reversible error. Defendant cites no legal authority for this proposition. This order can easily be amended via a request for a supplemental order of possession or other subsequent proceedings. 735 ILCS 5/15-1508(g) (West 2008).

¶ 46    As a final note, we find nothing unusual in the credit bid for the property by virtue of the sale of the loan and the assignment of the judgment of foreclosure and sale to Sewickley, LLC, by First Bank. First Bank was the plaintiff in this action at the time the judgment of foreclosure and sale was entered and, accordingly, was granted the right by the trial court to credit bid at the judicial sale of the property. It is well settled that the assignee of a judgment "takes it with all rights incident to its enforcement and collection which might have been employed by its assignor," and "[t]he assignee of a judgment has the right to use the name of the assignor in any motion or proceeding relating thereto." *Byrne Organization, Inc. v.*

*Cantin*, 16 Ill. App. 2d 31, 37-38 (1957); see also 735 ILCS 5/2-1008(a) (West 2008) (which prevents the abatement of a cause of action simply by virtue of the transfer of a party's interest to a nonparty to the proceeding).

¶ 47                                              IV. Conclusion

¶ 48        We see nothing either procedurally or substantively that would cause us to disrupt the circuit court's confirmation of the sale of the real estate at 4008 N. Lincoln Ave., Chicago, Illinois.

¶ 49        Therefore, we affirm the judgment of the circuit court order approving the judicial sale of the property in question for the credit bid of $300,000.

¶ 50        Affirmed.